[No. H003755. Sixth Dist. Feb. 4, 1988.]

SPECTRA-PHYSICS, INC., Petitioner, v
THE SUPERIOR COURT OF SANTA CLARA COUNTY,
Respondent;
TELEDYNE, INC., et al., Real Parties in Interest.

1488

**COUNSEL**

Heller, Ehrman, White & McAuliffe, René Tatro, Jonathan S. Leo and Monika P. Lee for Petitioner.

No appearance for Respondent.

Landels, Ripley & Diamond, John F. Barg, Robert R. Klotz, Tyndall, Smoger, Mann & Ramirez and Gerson H. Smoger for Real Parties in Interest.

**OPINION**

**AGLIANO, P. J.**—The issue in this case is whether, in preparing for a hearing to determine the good faith of a sliding scale settlement under Code of Civil Procedure Section 877.6, the settling parties may depose counsel for the nonsettling defendants to inquire whether the nonsettling defendants may have been guilty of bad faith or unreasonable conduct which impeded the settlement process and thereby made a lower settlement reasonable, within the meaning of the decision in *Abbott Ford* v. *Superior Court* (1987) 43 Cal.3d 858 [239 Cal.Rptr. 626, 741 P.2d 124] (hereafter *Abbott Ford*).

Approximately 90 plaintiffs brought 6 separate lawsuits alleging contamination of groundwater in Mountain View, California, and seeking damages for personal injuries, diminution in value of property and punitive damages. Seven defendants owned, operated, or are the successors in interest of own-

ers or operators of five industrial sites near the affected area. Petitioner, Spectra-Physics, Inc. (Spectra-Physics) is one of six nonsettling defendants challenging the good faith of a settlement between the plaintiffs and defendant Teledyne, Inc. (Teledyne). By this petition for a writ of mandate or prohibition, Spectra-Physics seeks to prevent Teledyne from taking the depositions of counsel for Spectra-Physics and for codefendant CTS Printex. Teledyne obtained permission of the court to take these depositions to investigate whether conduct of the nonsettling defendants (1) unreasonably or in bad faith impeded settlement, or (2) justified the trial court in approving a lower settlement than would otherwise be acceptable, under principles expressed in the *Abbott Ford* decision.

On February 9, 1987, Teledyne and the plaintiffs achieved a settlement in which Teledyne guaranteed plaintiffs a specified dollar amount in total recovery[1] with a cash advance equivalent to 25 percent of the guaranteed amount. Teledyne will not have to pay more than the cash advance unless plaintiffs do not recover at least the additional 75 percent of the guaranteed amount from the other defendants, none of whom have settled with plaintiffs. Teledyne may veto any settlement between plaintiffs and other defendants. The settlement is the type of agreement known as a "Mary Carter" or sliding scale agreement, a kind of settlement which the *Abbott Ford* decision held may be valid provided it meets certain criteria.

Spectra-Physics alleges that when the above settlement was achieved there had been no previous settlement negotiations with any of the other defendants.

After the settlement agreement, Teledyne offered the other defendants an opportunity to participate in the settlement agreement on certain terms not subject to negotiation. For one thing, the defendants had to accept a dollar limit equal to the cash advance on Teledyne's share of the settlement cost. Thus if all defendants had joined in the settlement, Teledyne's share would have been no more than 25 percent. As of the date of Spectra-Physics' petition for writ of mandate, no other defendant had settled with plaintiff. Spectra-Physics alleges here that Teledyne's liability for plaintiffs' injuries greatly exceeds a 25 percent share.

Teledyne offers evidence in this proceeding which it claims shows that all defendants contributed in roughly equivalent fashion to the contamination of plaintiffs' wells. For example, it asserts groundwater samples from Spectra-Physics sites tests within a range of 2,000 to 8,000 parts of toxic contam-

---

[1]The trial court has held that the financial terms of the settlement agreement are confidential.

inant per billion, while water from Teledyne sites ranges from 2,500 to 9,800 parts per billion, and the highest concentration so far found, 13,000 parts per billion, comes from a CTS Printex site. If the trial court ultimately accepts this evidence of proportionate contribution to plaintiffs' damages, Teledyne will be in a strong position to demonstrate that its settlement here is reasonably related to its proportionate share of liability and therefore is a good faith settlement. (See *Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates* (1985) 38 Cal.3d 488 [213 Cal.Rptr. 256, 698 P.2d 159] (*Tech-Bilt*).)

Teledyne moved for a determination of the good faith of its settlement pursuant to Code of Civil Procedure section 877.6. The court allowed the nonsettling defendants an opportunity for discovery in preparing their challenge to the settlement agreement. The judge acting as special master in charge of discovery permitted Teledyne, over opposition, to take the depositions of the two attorneys for defendants Spectra-Physics and CTS Printex.

Teledyne, to justify this discovery, made the following showing of alleged bad faith. It contended that attorney Tatro, representing Spectra-Physics, had made efforts on behalf of his client to induce plaintiffs' counsel to repudiate the settlement agreement with Teledyne and to execute an identical agreement with Spectra-Physics. Teledyne offered the declaration of John F. Barg, one of Teledyne's attorneys. That declaration refers to a letter submitted by John Nolan, counsel for CTS Printex, to the court. The letter, written by Gerson H. Smoger (plaintiffs' attorney) to Jonathan S. Leo (co-counsel for Spectra-Physics), says, referring to a settlement conference regarding Teledyne's agreement: ". . .[L]et me remind you of what Rene Tatro said to me at the recent settlement conference: 'We can do it for [the guaranteed amount]. What we object to is Teledyne getting off so cheap. We think we should pay the [cash advance] and they should pay the [additional 75 percent of the guaranteed amount].'" Mr. Barg also declares that Nolan said he would "fight" the Teledyne settlement and would not participate in it even though he did not yet know its monetary terms. Teledyne says Tatro's remarks (as set out in the Smoger letter) are an admission that the amounts to be paid by Teledyne under the settlement agreement are within the "ballpark" as representing a fair settlement for plaintiffs' losses. Further, Teledyne asserts that Nolan's remarks evidence bad faith refusal to participate in settlement negotiations. Teledyne argues that language in the *Abbott Ford* decision justifies a downward adjustment of the reasonable range measure of a good faith settlement in a situation where unreasonable conduct of nonsettling defendants contributes to the settlement result. Accordingly, Teledyne wishes to depose Tatro and Nolan to demonstrate that a downward revision of the reasonable range of settlement is in order here. (43 Cal.3d 858.)

Spectra-Physics made the point that the alleged conduct of counsel did not occur during the settlement process but rather afterwards, and therefore such conduct cannot be viewed as contributing to the settlement result or impeding the agreement. However, Teledyne countered that its agreement provided for a "window period" during which the nonsettling defendants could participate in the agreement by paying a portion of the guaranteed amount. The alleged bad faith conduct took place during that period. Accordingly, Teledyne argued that under these circumstances, the nonsettling defendants' efforts to undermine Teledyne's settlement and to impede a global settlement clearly occurred during the settlement process, not afterwards, and therefore this conduct is an appropriate subject of discovery.

Spectra-Physics contends the court manifestly abused its discretion in allowing counsel to be deposed without the showing of good cause normally required to justify such discovery.

■ Preliminarily, Teledyne contends that Spectra-Physics is not entitled to a writ of mandate because it has an adequate legal remedy, to await conclusion of the good faith hearing authorized by Code of Civil Procedure section 877.6 and then, if the settlement be found to have been in good faith, to attack that finding by statutorily authorized writ of mandate, pursuant to Code of Civil Procedure section 877.6, subdivision (e).

We cannot agree that the above-described procedure provides Spectra-Physics an adequate remedy. The propriety of taking the deposition of opposing counsel is a suitable subject for prerogative writ review (see, e.g., *Meritplan Insurance Co.* v. *Superior Court* (1981) 124 Cal.App.3d 237 [177 Cal.Rptr. 236]), because the damage done by improperly allowing such discovery cannot readily be cured after it has occurred.

DISCUSSION

■ The starting point of inquiry is—under what circumstances is it generally permissible to depose opposing counsel? "[T]he practice of taking the deposition of opposing counsel should be severely restricted, and permitted only upon showing of extremely good cause . . . ." (*Fireman's Fund Ins. Co.* v. *Superior Court* (1977) 72 Cal.App.3d 786, 790 [140 Cal.Rptr. 677].) That decision, and others, did permit such deposition in an insurance bad faith case, where "an attorney for a party is the sole, or principal, negotiator and in which bad faith is alleged and punitive damages are sought based upon that allegation of bad faith." (*Id.* at p. 790) (See also *Meritplan Insurance Co.* v. *Superior Court, supra,* 124 Cal.App.3d 237, 241-242.)

However, even where depositions are permitted in insurance bad faith litigation, the attorney-client privilege nevertheless applies and limits the questions which may be asked of counsel, unless the insurer directly relies on advice of counsel as a defense to the bad faith charge. (*Transamerica Title Ins. Co.* v. *Superior Court* (1987) 188 Cal.App.3d 1047 [233 Cal.Rptr. 825].) ■ In the context of establishing the good faith of a settlement, reliance on advice of counsel is not obviously relevant; the objective reasonableness of the settlement is the matter in issue. (*Tech-Bilt, supra,* 38 Cal.3d at pp. 499-500.) Hence deposing counsel in this context will have limited usefulness at best. We also consider that deposing counsel during the very proceeding in which he is providing representation is plainly a disruptive process. Further, the likelihood the attorney will assert claims of work product and attorney-client privilege is great, and therefore, as already stated, the usefulness of the procedure is questionable.

■ Outside the area of insurance bad faith actions, counsel for Teledyne provides no authorities permitting trial counsel to be deposed. On the contrary, the decisions express the same strong policy considerations against such discovery as does the *Fireman's Fund* case, *supra*, 72 Cal.3d 786.

For example: "The practice of forcing trial counsel to testify as a witness, however, has long been discouraged, see *Hickman* v. *Taylor,* 329 U.S. 495, 513 [91 L.Ed. 451, 67 S.Ct. 385] . . . (it causes 'the standards of the profession [to] suffer'), and recognized as disrupting the adversarial nature of our judicial system, *see id.* at 516 . . . ('Discovery was hardly intended to enable a learned profession to perform its functions . . . on wits borrowed from the adversary.'). Taking the deposition of opposing counsel not only disrupts the adversarial system and lowers the standard of the profession, but it also adds to the already burdensome time and costs of litigation. It is not hard to imagine additional pretrial delays to resolve work-product and attorney-client objections, as well as delays to resolve collateral issues raised by the attorney's testimony. Finally, the practice of deposing opposing counsel detracts from the quality of client representation. Counsel should be free to devote his or her time and efforts to preparing the client's case without fear of being interrogated by his or her opponent. Moreover, the 'chilling effect' that such practice will have on the truthful communications from the client to the attorney is obvious. [¶] We do not hold that opposing trial counsel is absolutely immune from being deposed. We recognize that circumstances may arise in which the court should order the taking of opposing counsel's deposition. But those circumstances should be limited to where the party seeking to take the deposition has shown that (1) no other means exist to obtain the information than to depose opposing counsel, [citation]; (2) the information sought is relevant and nonprivileged; and (3)

the information is crucial to the preparation of the case." (*Shelton* v. *American Motors Corp.* (8th Cir. 1986) 805 F.2d 1323, 1327.)

To justify deposing counsel for the nonsettling parties, Teledyne argues that language in the *Abbott Ford* decision permits such discovery. (43 Cal.3d 858.) ■ It will be recalled that *Tech-Bilt, supra,* prescribed relevant considerations for determining whether a settlement is entitled to the badge of good faith, conferring immunity on the settling defendant from co-defendants' claims for contribution or equitable indemnity. These considerations include "a rough approximation of plaintiffs' total recovery and the settlor's proportionate liability, the amount paid in settlement, the allocation of settlement proceeds among plaintiffs, and a recognition that a settlor should pay less in settlement than he would if he were found liable after a trial." (*Tech-Bilt, supra,* 38 Cal.3d at p. 499.) Also relevant are insurance policy limits, financial condition of parties, and the existence of collusion or tortious conduct aimed to injure nonsettling defendants. (*Id.* at pp. 499-500.)

■ The decision in *Abbott Ford* adds new considerations. *Abbott Ford* applied the *Tech-Bilt* criteria to a sliding scale settlement agreement. Language in the opinion suggests that bad faith conduct of nonsettling defendants which injures settling defendants or impedes the settlement process may also be factored into the good faith determination formula. That language includes this observation:

"[A] defendant may be on shaky equitable grounds when it thereafter seeks to attack the 'good faith' of a sliding scale agreement that has been occasioned by its own recalcitrance. . . . [I]n such a setting it is appropriate for a trial court to take into consideration the conduct of the nonsettling defendant in determining whether a sliding scale agreement is a good faith settlement . . . ." (43 Cal.3d at p. 881.)

■ Further, *Abbott Ford* goes on to say that an appropriate sanction for such bad faith conduct of a nonsettling defendant may be to lower the "ballpark" estimate, i.e., to award the badge of good faith to a lower settlement than might otherwise have qualified. Thus, the decision says, "the consequences that may be visited on a defendant who is found to have been unreasonably recalcitrant in settlement negotiations" may appropriately include downward adjustment of the trial court's " 'ballpark' determination . . . to take into account any unreasonable or bad faith conduct of a nonsettling party which may have impeded the settlement process. If the court finds that the party challenging the settlement engaged in such conduct, it may reduce the lower threshold of the 'ballpark' cutoff, and find a settlement in good faith even if the 'consideration' paid for, i.e., the 'value' of, the

sliding scale agreement is somewhat lower than the court would otherwise have found acceptable." (*Abbott Ford, supra,* 43 Cal.3d at pp. 881-882.)

More generally, the *Abbott Ford* decision held that so-called sliding scale or Mary Carter settlement agreements, as Teledyne and plaintiffs have signed here, may qualify as good faith settlements, but to pass muster these settlements may have to undergo more vigorous scrutiny in some respects.[2]

■ Our job is to decide whether the multifaceted examination of the good faith of the sliding scale agreement here, which the trial court must undertake under *Abbott Ford,* legitimately includes permitting depositions of counsel for the nonsettling defendants, upon Teledyne's counsel's assertion that counsel for Spectra-Physics has tried to impede Teledyne's settlement and to achieve an identical such settlement for his own client, and that counsel for CTS Printex has unjustifiably repudiated the settlement out of hand.

The circumstances under which opposing counsel may be deposed are limited to those where (1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and not privileged; (3) the information is crucial to the preparation of the case. (*Shelton* v. *American Motors Corp., supra,* 805 F.2d at p. 1327; see also *Fireman's Fund Insurance Co.* v. *Superior Court, supra,* 72 Cal.App.3d 786, 789-790.)

Applying these criteria here, we ask, first, does Teledyne have other means to obtain information about nonsettling defendants' conduct bearing on the nature of the settlement achieved? The answer is clearly yes. For a start, it can discuss with the plaintiffs—who have a joint interest with Teledyne in achieving the good faith imprimatur for this settlement—what overtures codefendants have made to plaintiffs, what discussions have taken place, what settlement possibilities explored. Counsel for plaintiffs, again having a joint stake with Teledyne in establishing that this settlement is in good faith, will most probably be cooperative in providing this information. Teledyne can also provide expert evaluations of the value of the plaintiffs' case, which it will have to offer in any case, supplemented by evaluations of the codefendants' potential liability shares. This evidence will at once be relevant both to demonstrate that Teledyne's settlement is within a reason-

---

[2] For example, a point made in *Abbott Ford* which may well become important later in this litigation is that the settling defendant may not retain a general veto power over subsequent settlements with other defendants but may only reserve a veto power confined to subsequent settlements "that will require the earlier settling defendant to bear more than its fair 'ballpark' share of damages." (*Abbott Ford* v. *Superior Court, supra,* 43 Cal.3d 858, 883.)

able range of its comparative liability, and also to show that agreeing to this settlement, on the terms offered, would have been reasonable from codefendants' viewpoints. Depositions of codefense counsel are not essential for obtaining any of this evidence. Finally, Teledyne has already offered its counsel's declaration evidencing the alleged conduct of Attorneys Tatro and Nolan.

The second criterion for permitting depositions of counsel is probably satisfied here, in that counsel's negotiations could be relevant to the issue of whether codefendants unreasonably refused to cooperate in settlement. As to privilege, that objection would not prevent depositions entirely, but at most might be invoked in the course of depositions as to specific questions invading the attorney-client privilege.

The third inquiry is whether this evidence is crucial to the presentation of the case. Here the situation is complicated by the fact that the case is not Teledyne's to present, in the first instance. The burden of attacking the good faith of a settlement falls on the nonsettling codefendants, and it is they who must first make their prima facie case that the settlement is not in good faith. (*Tech-Bilt, supra,* 38 Cal.3d at pp. 499-500; Code Civ. Proc., § 877.6, subd. (d).) Only then need Teledyne come forward and justify the settlement. Therefore, it cannot be said that conduct of counsel of codefendants is immediately crucial to the presentation of Teledyne's case.

Further, Teledyne's declaration that counsel for Spectra-Physics tried to achieve an identical settlement for his client does not, as Teledyne contends, conclusively demonstrate Spectra-Physics's bad faith in attacking Teledyne's settlement. There is no necessary inconsistency in Spectra-Physics taking the position that a 25 percent liability share settlement is unfair as to Teledyne but fair as to Spectra-Physics. Obviously, the inculpatory facts may differ as to each codefendant; their proportionate liability shares are not necessarily equal. Therefore, Teledyne's declaration is not sufficient to demonstrate a prima facie case of bad faith on Spectra-Physics's part such as might justify allowing discovery in this sensitive area.[3] In any event, it is significant that Teledyne does not explain how the conduct of codefendants injured Teledyne or affected the settlement in such a manner as to justify lowering the so-called ballpark figure in evaluating this settlement.

Given the strength of the policy considerations against deposing opposing counsel, we conclude that the showing made by Teledyne up to now simply does not justify this unpalatable procedure which erodes the adversary

---

[3] Compare the requirement that to justify invoking the fraud exception to the attorney-client privilege, it is necessary to present a prima facie evidentiary showing of fraud beyond conclusionary allegations. (*See United Services Automobile Association* v. *Werley* (Alaska 1974) 526 P.2d 28.)

system and adds to the already burdensome time and costs of the good faith settlement hearing, which already in *Abbott Ford's* wake threatens to evolve from minitrial to full dress production approaching in cost and scope the trial to come.

DISPOSITION

Real parties in interest have been notified that a peremptory writ in the first instance could be issued here, and have filed opposition. The peremptory writ of mandate will issue in the first instance. (Code Civ. Proc., § 1088; *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 177-182 [203 Cal.Rptr. 626, 681 P.2d 893].)

Let a writ of mandate issue as prayed directing respondent court to vacate its order permitting the depositions of defense counsel to be taken and to make a different order denying permission to take such depositions. Petitioner shall have costs as the prevailing party herein. Our temporary stay of the depositions of counsel for nonsettling defendants shall remain in effect until this opinion becomes final.

Brauer, J., and Zecher, J.,* concurred.

---

* Assigned by the Chairperson of the Judicial Council.