[No. B054773. Second Dist., Div. Seven. Feb. 1, 1993.]

Estate of MARY MARGUERITE RUCHTI, Deceased.
MARY LOUISE HEDLEY, as Co-executor, etc., et al., Petitioners and
Respondents, v.
ROBERT R. RUCHTI II et al., Objectors;
RICHARD A. DeSANTIS, Appellant.

1594

**COUNSEL**

Richard A. DeSantis and Stephen W. Holohan for Appellant.

Taubman, Simpson, Young & Sulentor, William J. Sulentor and Peter M. Williams for Petitioners and Respondents.

**OPINION**

**WOODS (Fred), J.—**

## I.

### INTRODUCTION

Respondents' trial attorney, Peter M. Williams (Williams), was handed a subpoena for his own deposition on December 13, 1989, by appellant, Richard A. DeSantis (DeSantis), attorney for Robert R. Ruchti II (Ruchti). The subpoena was served during Ruchti's deposition, in which Williams was doing the questioning. The subpoena set the Williams's deposition for December 26, 1989.

DeSantis did not respond, as he had promised, to Williams's overture after a court hearing to discuss the propriety of taking Williams's deposition.

Williams wrote a meet-and-confer letter to DeSantis on December 20, 1989. In that letter, DeSantis was advised to utilize interrogatories rather than to pursue the taking of opposing counsel's deposition.

A response to the meet-and-confer letter was not forthcoming. This failure required the filing, by Williams, of an application for a protective order. It was filed on December 26, 1989.

The hearing on the motion was finally held on October 23, 1990, almost 11 months later. DeSantis opposed the protective order application and lost. Pursuant to Code of Civil Procedure section 2023, subdivision (b)(1), the court imposed sanctions of $1,000 upon DeSantis, approximately one-half of the actual attorney fees incurred in the matter. The sanctions have not been paid.

A timely notice of appeal was filed.

Ruchti, through DeSantis, filed a petition for a writ of mandate, which sought review of many of the issues which are the subject of this appeal. Division Seven of this court denied the writ.

## II.

### FACTUAL AND PROCEDURAL SYNOPSIS

A.  *Early Problems in the Mary Marguerite Ruchti Probate.*

Mary Marguerite Ruchti died on February 22, 1988. Pursuant to provisions in her will, the superior court appointed her three children, Ruchti (DeSantis' client at least during the period from December 5, 1989, through January 17, 1991) and respondents Mary Louise Hedley and Daryl Elizabeth Pierro, as co-executors of her will. Letters testamentary were issued on June 15, 1988. The probate proceedings were commenced in the South District of the Los Angeles County Superior Court in Long Beach, California.

Ruchti was suspended as co-executor by Superior Court Judge James A. Sutton, Jr., on May 4, 1989. Ruchti petitioned for a rehearing, seeking to be reinstated as co-executor. The petition for rehearing was denied by Judge Richard F. Charvat on November 17, 1989. Amended letters empowering respondents as the only co-executors were issued on November 21, 1989.

The co-executors filed a petition under Probate Code section 9860 to determine the nature and extent of property of the estate being withheld by

Ruchti, Robert R. Ruchti III, and the other Ruchti interests. An amended Probate Code section 9860 petition was subsequently filed.

Judge Sutton, after removing Ruchti as co-executor, subsequently recused himself on the request of Ruchti. The case was then assigned to Judge Philip Hickok, who was peremptorily challenged under Code of Civil Procedure section 170.6 by a declaration filed against him by Joseph K. Borges, one of Ruchti's attorneys.

B.   *Attempts to Disqualify Judge William E. McGinley.*

Upon the urging of then Supervising Judge Richard F. Charvat, the parties agreed to consider using a retired judge to conduct the litigation. On January 17, 1990, retired Superior Court Judge William McGinley was appointed by Judge Charvat and thereafter, by stipulation of the parties, became the all-purpose judge in the case.

In a joint motion, the Ruchti interests sought to recuse Judge McGinley and to withdraw their stipulation to having him hear the case. A hearing was held on the motion by Judge Charvat on March 21, 1990. Judge Charvat made two findings: first, Judge McGinley should not be recused from the case; and, second, there was no impropriety in the conduct of Attorney Williams in the process of selecting Judge McGinley to hear the case.

In a further attempt to remove Judge McGinley, the Ruchti interests filed a petition for writ of mandate, prohibition or other relief and a request for stay on March 30, 1990, with the Court of Appeal. Division Five denied this writ application.

The Ruchti interests then sought relief from the California Supreme Court on April 16, 1990, seeking Judge McGinley's removal. This writ application again was denied.

The Ruchti interests then filed a motion under Code of Civil Procedure section 170.1, subdivision (a)(6) to remove Judge McGinley. The hearing on the Code of Civil Procedure section 170.1, subdivision (a)(6) motion was sent to Orange County where it was directed to the attention of Presiding Judge Leonard Goldstein and Assistant Presiding Judge James L. Smith. Because a temporary judge sitting by stipulation is not subject to Code of Civil Procedure section 170.1, subdivision (a)(6), the Orange County Court returned the matter to Los Angeles Presiding Judge Richard P. Byrne. Judge Byrne denied Ruchti's request to disqualify Judge McGinley.

On September 27, 1990, the Ruchti interests, represented by DeSantis and other counsel, filed a complaint in Los Angeles Superior Court's Central

District for rescission of the stipulation appointing Judge McGinley, for fraud, for declaratory relief, for injunctive relief, for "violation of CRC 244," and for abuse of process. The named defendants included the co-executors, Mary Louise Hedley and Daryl Elizabeth Pierro, the estate of Mary Louise Hedley's deceased husband (George Hedley), Peter Williams, Taubman, Simpson, Young & Sulentor (Williams's law firm), and Judge McGinley. Punitive damages were sought against all defendants, including Judge McGinley.

On September 27, 1990, the Ruchti interests attempted to obtain an ex parte temporary restraining order (TRO), apparently expecting the superior court judge to order Judge McGinley off the case. Williams and Taubman, Simpson, Young & Sulentor were served. This TRO application was denied in department 86 by Judge Ernest Hiroshige. The Ruchti interests tried again four days later to have another judge issue an ex parte TRO, this time with Judge David P. Yaffe, in department 86. Again, they were unsuccessful.

Williams and Taubman, Simpson, Young & Sulentor then demurred to the complaint. The demurrer was sustained without leave to amend as to the first four causes of action and a motion to strike was granted as to the fifth cause of action by Judge William Huss on November 16, 1990. Subsequently, Robert J. Hedley, the executor of the estate of George Hedley, moved to dismiss the complaint against him for the failure of the Ruchti interests to file a claim against the estate. This motion was granted on May 9, 1991, by Judge Stephen E. O'Neil. Neither respondents nor Judge McGinley has been served in that case.

In summary, as seen from the joint motion to recuse, the petition to the Court of Appeal, the petition to the California Supreme Court, and the court file in the superior court action, the allegations of the Ruchti interests were: that Attorney Williams misrepresented his relationship with Judge McGinley, inducing the plaintiffs to stipulate to Judge McGinley; that Judge McGinley is not fair or at least gives an appearance of unfairness; that there was a supposed noncompliance with California Rules of Court, rule 244 (which pertains to the mechanics of assigning temporary judges); and that there is no procedure to remove a retired judge sitting by stipulation. These same arguments are made in this appeal.

III.

DISCUSSION

Appellant has made various assignments of error regarding the upholding of the protective order and the awarding of sanctions. These assignments of

error go to the law regarding the taking of trial counsel's deposition, to the standard of review of discovery decisions, to Judge McGinley's jurisdiction to hear the case, and to whether the Code of Civil Procedure provisions regarding discovery sanctions are unconstitutional. There is no merit in any of appellant's contentions.

A. *Judge McGinley Properly Granted the Protective Order.*

■ It is apparently appellant's contention that since the co-executors did not have personal knowledge of all of the facts alleged in the Probate Code section 9860 petition, only their attorney, Williams, personally knew the facts. Having drawn such an apparent conclusion, the Ruchti interests and appellant argue that it was proper to take the deposition of Williams.

The leading case on attorney depositions is *Spectra-Physics, Inc.* v. *Superior Court* (1988) 198 Cal.App.3d 1487 [244 Cal.Rptr. 258]. The court discussed the principles involved and said:

" 'Taking the deposition of opposing counsel not only disrupts the adversarial system and lowers the standard of the profession, but it also adds to the already burdensome time and costs of litigation. It is not hard to imagine additional pretrial delays to resolve work-product and attorney-client objections, as well as delays to resolve collateral issues raised by the attorney's testimony. Finally, the practice of deposing opposing counsel detracts from the quality of client representation. Counsel should be free to devote his or her time and efforts to preparing the client's case without fear of being interrogated by his or her opponent. Moreover, the "chilling effect" that such practice will have on the truthful communications from the client to the attorney is obvious.' " (*Id.,* at p. 1494.)

The court went on to hold:

"The circumstances under which opposing counsel may be deposed are limited to those where (1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and not privileged; (3) the information is crucial to the preparation of the case." (198 Cal.App.3d at p. 1496.)

*Spectra-Physics, Inc.* was cited by Williams in the December 20, 1989, meet-and-confer letter to which DeSantis failed to respond.

It is, of course, common to use various methods to investigate and prepare a case. Here the public records, including assessor's records, recorder's records, probate court files, information from the Secretary of State, the Corporations Commissioner and the Division of Oil and Gas, were examined. There were interviews with family members and others. Appraisers, oil and gas abstractors, a handwriting expert and others were consulted. The data developed comprised the foundation for the Probate Code section 9860 petition. These were not matters peculiarly within Williams's personal knowledge.

In fact, after terminating sanctions for other discovery abuses were granted in the case, the co-executors were able, in a three-day default prove-up hearing, to prove the facts set forth in the court's findings. A cursory look at the nine-page findings shows the depth of the information compiled.

Williams acted properly when he invited appellant to propound interrogatories. Properly drafted interrogatories could elicit the facts upon which the co-executors based their contentions and would require the identification of witnesses and of documents. Other common discovery devices could also have been used.

It is clear that the three-part *Spectra-Physics* test was not met by appellant. Rather than utilize readily available discovery techniques, DeSantis apparently decided to rely on other litigation tactics by serving the deposing attorney with a deposition subpoena during the deposition of the client of DeSantis.

B.   *The Standard of Review Is Whether the Sanctions Award Was Arbitrary and Capricious and an Abuse of Discretion.*

The appellant cites many cases which do not concern discovery, arguing that the discovery order is subject to de novo review. If discovery disputes are to be reviewed de novo, appellate courts would be deluged with sense-numbing second looks at superior court law and motion decisions. That standard is not the law. The standard of review is whether or not there has been an abuse of discretion. Discovery sanctions are subject to reversal only for " 'arbitrary, capricious, or whimsical action.' " (*Alliance Bank* v. *Murray* (1984) 161 Cal.App.3d 1, 9-10 [207 Cal.Rptr. 233].)

■ Judge McGinley's decision was correct under any standard of review and most certainly under the abuse of discretion standard. The Ruchti interests, and DeSantis, were unable to show that no other means existed to obtain the information than to depose Williams. They also never showed that the information was not privileged. It is not a question of whether or not the information never discovered was important to the preparation of the case of the Ruchti interests. The point is clearly that other discovery devices less intrusive to the attorney/client privilege and work product protection, such as interrogatories, would have been appropriate.

C. *Judge McGinley Had Jurisdiction Over the Discovery Hearing Pursuant to Stipulation of the Parties.*

The order appointing Judge McGinley was based upon the court approved stipulation of the parties which states that he is appointed as the all purpose judge to "hear and determine all pre-trial issues and motions and preside over the trial of the within matter until rendition of judgment herein and shall continue to act in said capacity until the conclusion of all matters which may be determined within the trial jurisdiction of the Superior Court including, but not limited to, all post-trial motions relating to the judgment filed or to be filed herein."

Appellant cites cases to this court that are inapposite. In *Sarracino* v. *Superior Court* (1974) 13 Cal.3d 1 [118 Cal.Rptr. 21, 529 P.2d 53], the court was concerned with the appointment of a commissioner to hear a default relative to a family law support application. *In re Plotkin* (1976) 54 Cal.App.3d 1014 [127 Cal.Rptr. 190], concerned a contempt citation issued by a temporary judge to a third party expert witness involved in a fee dispute with one of the litigant's attorneys. ■ Appellant cites no case holding that sanctions, which are authorized by the discovery act, cannot be imposed by a temporary judge (a retired judge of the superior court in this instance) whose appointment and hearing of a discovery matter is pursuant to stipulation. Temporary judges may even cite attorneys for contempt *during* the pendency of a stipulated cause (*Nierenberg* v. *Superior Court* (1976) 59 Cal.App.3d 611, 615, 620 [130 Cal.Rptr. 847] [Contempt order was reversed on the grounds that the direct contempt order was imposed *after* the final determination of the indulging cause.]; *Rosenstock* v. *Municipal Court* (1976) 61 Cal.App.3d 1, 8-9 [132 Cal.Rptr. 59] [Judgment of contempt vacated on other grounds (due process).].) A temporary judge certainly has the inherent power to regulate his or her own court proceedings by awarding sanctions in a discovery hearing pursuant to an appointment by way of stipulation.

We are faced with a situation where an attorney refused to withdraw a deposition subpoena after being advised of applicable law. DeSantis forced

Williams to file an application for a protective order and opposed the granting of the protective order. Pursuant to Code of Civil Procedure section 2023, subdivision (b)(1), sanctions were granted. In sum, the stipulation to have Judge McGinley "determine all pre-trial issues and motions" clearly gave him jurisdiction to make an order for sanctions. Appellant argues that Judge McGinley lacked power to grant sanctions. We note that appellant inconsistently sought counter sanctions in the same motion before Judge McGinley. Not only did appellant not object to the court's power to grant sanctions, appellant actively sought them. We conclude that DeSantis' position is apparently that Judge McGinley had the power to impose sanctions on Williams or respondents, but not the power to impose them on DeSantis. We reject such a position as it is an argument in favor of a double standard.

D. *No Due Process Violations Appear in the Statutory Scheme or in the Sanctions Award.*

█ Appellant also argues that Code of Civil Procedure section 2023 is unconstitutional because a court is not required to make findings. It is argued that this violates the due process provisions of the federal and state Constitutions.

It should be noted that Judge McGinley patiently sat through long argument that covered 48 pages of a transcript concerning this motion. Appellant was given full rein to make his unsuccessful arguments.

*Mattco Forge, Inc.* v. *Arthur Young & Co.* (1990) 223 Cal.App.3d 1429 [273 Cal.Rptr. 262] is dispositive. There, the court construed the similar provisions of Code of Civil Procedure section 2031, subdivision (e)(6) and noted that there is no need for written findings where the party opposing the motion for sanctions was unsuccessful. (223 Cal.App.3d at p. 1438.) However, where the trial court determines that the one subject to the sanctions acted with substantial justification, the Court of Appeal implies that findings might be necessary since the sanctions are no longer mandatory. (*Ibid.*) In the absence of such a determination, findings are not required.[1]

The law pertaining to discovery sanctions in the trial court is much different from that regarding appellate sanctions. Here a written application for a protective order was made which also sought sanctions. Written

---

[1]The *Mattco Forge, Inc.* court emphasized the mandatory requirements of Code of Civil Procedure section 2031, subdivision (e)(6) in the following language: " 'The court *shall* impose a monetary sanction . . . unless it finds that the one subject to the sanction acted with substantial justification . . . .' " (Italics added.)

opposition was filed (also seeking sanctions), and a protracted, contested hearing was held. The procedural posture of appellate sanctions for frivolous appeals is entirely different, and appellant's reliance on *In re Marriage of Flaherty* (1982) 31 Cal.3d 637 [183 Cal.Rptr. 508, 646 P.2d 179] is misplaced.

Not to be overlooked is the fact that appellant did not request written findings from the court. Although the statute does not require the court to make such findings, should a losing party desire them, a request should certainly have been made, and having failed to lodge such a request with the court, appellant has waived entitlement thereto and cannot successfully raise the issue on appeal.

Moreover Judge McGinley did make his findings clear on the record. He stated that the test of *Spectra-Physics, Inc.* was not met. Judge McGinley's findings were even cited by appellant in his brief. ■ Appellant also cites as reversible error that his March 20, 1990, "reply memorandum" was not considered by the court. First, it was not in the court file. Second, it should be noted that it was a replication to the co-executors' reply to the opposition to the protective order application. Third, it was essentially a rewrite of the opposition already on file. Fourth, and more importantly, almost the entire contents of the "reply memorandum" were argued to Judge McGinley orally at the hearing of the protective order application. Appellant's counsel essentially *read* the "reply memorandum" into the record during argument. Thus, any error Judge McGinley made by not considering a pleading not in the file was not prejudicial to appellant and the Ruchti interests. Clearly, all due process requirements were met.

## IV.

### SANCTIONS ON APPEAL

We conclude that appellant has filed a frivolous appeal within the meaning of Code of Civil Procedure section 907, rule 26(a) of California Rules of Court, and *In re Marriage of Flaherty, supra,* 31 Cal.3d 637. Counsel was apprised of this court's intention to consider the issue of sanctions at the time of oral argument by letter from the clerk of the court dated November 16, 1992. Additionally, counsel were given the opportunity to file supplemental letter briefs on the issue of appellate sanctions at close of oral argument. Respondents filed their letter brief on December 14, 1992. Appellant filed his letter brief on December 24, 1992. Both briefs have been read and considered by the panel.

## DISPOSITION

The judgment is affirmed. Sanctions on appeal are awarded to respondents against appellant in the amount of $10,000. Costs on appeal are awarded to respondents.

Lillie, P. J., and Johnson, J., concurred.

A petition for a rehearing was denied February 16, 1993, and appellant's petition for review by the Supreme Court was denied April 21, 1993.