[No. G037421. Fourth Dist., Div. Three. Oct. 23, 2006.]

CAREHOUSE CONVALESCENT HOSPITAL, Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
BRIAN SIMS et al., Real Parties in Interest.

**COUNSEL**

Wroten & Associates, Inc., Kippy L. Wroten and Laura K. Sitar for Petitioner.

No appearance for Respondent.

Wilkes & McHugh, Robert John Chavez and Marissa A. Smeyne for Real Parties in Interest.

**OPINION**

**SILLS, P. J.**—The adversarial system of justice presumes that the attorneys for each side oppose one another, not depose one another. We issue a peremptory writ because plaintiffs have failed to make the requisite showing of "extremely" good cause to overcome the presumption against taking the deposition of defense counsel Kippy Wroten.

I

Petitioner Carehouse Convalescent Hospital (Carehouse) operates a skilled nursing facility in which Richard Sims (decedent), a 90-year-old man, was being treated during most of 2002 following a stroke. Real parties in interest (plaintiffs) are Sims's children and successors in interest.

In October 2003, plaintiffs sued Carehouse for wrongful death and elder abuse, alleging that the facility was understaffed and that Carehouse "knew that it could not provide enough staffing to meet Federal and state guidelines; and . . . made a conscious decision to continue with its pattern and practice of understaffing the Facility and thereby causing injuries to its residents, including Mr. Sims."

Plaintiffs sent Carehouse requests for admissions asking it to admit or deny whether it had 3.2 nursing hours per-patient-day during the period of decedent's residency. In response, Carehouse admitted that the 3.2 staffing ratio in that one-year period of time was not met on every day.

Plaintiffs then propounded an interrogatory requesting Carehouse to list the nursing hours per-patient-day ratio for each day of decedent's residency. Carehouse responded that it already had produced staffing documentation and that to "answer this Interrogatory would require preparation of a compilation, abstract, or summary, the burden of which would be substantially the same for propounding party." Carehouse did not maintain a log of its staffing ratios for the calendar year 2002.

In June 2006, plaintiffs filed a motion to compel further responses. Carehouse's opposition raised the attorney work product doctrine.

At the hearing, Wroten explained why. Since Carehouse did not maintain such a log of the staffing ratios, in 2002, she, another attorney and a law clerk compiled this information by applying the regulatory statutes to the staffing logs and sign-in sheets: "It's . . . going to the regulation and saying, do I get to include this staff member, who is a salaried staff member who would not be on this list over here hourly, do I include that in order to evaluate the staffing ratios, and then doing my personal investigation as far as what the meaning of the statute is and when I get to put that person's hours over into that ratio."

Wroten emphasized that she prepared Carehouse's response "off the same documentation that [plaintiffs] had." Plaintiffs virtually conceded as much:

"THE COURT: Well, but she's saying that they calculated it based on the same information that you have.

"MR. CHAVEZ: Well, but see now, that may be, I don't know, I don't know what they used. But, if that's true, now she's also telling you that we can do it differently. Well, that's all the more reason why I need to know what their position is."

Respondent court issued an order granting the motion, but directing that the response be provided, if necessary, by Wroten's deposition: "If Defendant's Counsel has made independent decisions regarding the classification of certain employees of Defendant, she has placed herself in the position of being an expert witness, and plaintiff is entitled to depose her as an expert."

Plaintiffs promptly noticed Wroten's deposition, and Carehouse filed this petition. We issued a temporary stay and gave a *Palma* notice. (See *Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171 [203 Cal.Rptr. 626, 681 P.2d 893].) Having received opposition to the petition for writ of mandate, we now consider the merits.

## II

■ Depositions of opposing counsel are presumptively improper, severely restricted, and require "extremely" good cause—a high standard. (*Spectra-Physics, Inc. v. Superior Court* (1988) 198 Cal.App.3d 1487, 1493 [244 Cal.Rptr. 258] (*Spectra-Physics*); see also *Trade Center Properties, Inc. v. Superior Court* (1960) 185 Cal.App.2d 409, 411 [8 Cal.Rptr. 345] (*Trade Center*).)[1]

There are strong policy considerations against deposing an opposing counsel. The practice runs counter to the adversarial process and to the state's public policy to "[p]revent attorneys from taking undue advantage of their adversary's industry and efforts." (Code Civ. Proc., § 2018.020, subd. (b).) " ' "Discovery was hardly intended to enable a learned profession to perform its functions . . . on wits borrowed from the adversary." ' " (*Spectra-Physics, supra*, 198 Cal.App.3d at p. 1494, quoting *Hickman v. Taylor* (1947) 329 U.S. 495, 516 [91 L.Ed. 451, 67 S.Ct. 385] (conc. opn. of Jackson, J.).)

Attorney depositions are disruptive, and add to the length and expense of litigation. Rather than preparing the clients' case for trial, counsel must be prepared (often by retaining additional counsel) to place himself or herself in the witness box, being a responsive witness while remaining a partisan advocate. "There is a reason there are so few successful player-coaches—it's hard to do two things well at the same time. . . . We speak from painful experience: Lawyers make the absolute worse deposition witnesses." (Solovy & Byman, *Discovery: Opponent Deponents* (Jan. 8, 2001) 23 Nat'l L.J. p. A17.) The parties get sidetracked into endless collateral disputes about which attorney statements are protected and which are not, and it increases

---

[1] This is a variant of the Restatement's test: "A tribunal should not permit a lawyer to call opposing trial counsel as a witness unless there is a compelling need for the lawyer's testimony." (Rest.3d Law Governing Lawyers, § 108(4), p. 149.)

the possibility that the lawyer may be called as a witness at trial. " 'It is not hard to imagine additional pretrial delays to resolve work-product and attorney-client objections, as well as delays to resolve collateral issues raised by the attorney's testimony.' " (*Spectra-Physics, supra*, 198 Cal.App.3d at p. 1494.)

Attorney depositions chill the attorney-client relationship, impede civility and easily lend themselves to gamesmanship and abuse. " 'Counsel should be free to devote his or her time and efforts to preparing the client's case without fear of being interrogated by his or her opponent.' " (*Spectra-Physics, supra*, 198 Cal.App.3d at p. 1494.) "[I]n the highly charged atmosphere of litigation, attorney depositions may serve as a potent tool to harass an opponent." (Flynn, Jr., *On "Borrowed Wits": A Proposed Rule for Attorney Depositions* (1993) 93 Colum. L.Rev. 1956, 1965 (hereafter Flynn, Jr.).)

To effectuate these policy concerns, California applies a three-prong test in considering the propriety of attorney depositions. First, does the proponent have other practicable means to obtain the information? Second, is the information crucial to the preparation of the case? Third, is the information subject to a privilege? (*Spectra-Physics, supra*, 198 Cal.App.3d at pp. 1494–1495, 1496; see also *Estate of Ruchti* (1993) 12 Cal.App.4th 1593, 1601 [16 Cal.Rptr.2d 151] [affirming protective order against deposition of opposing counsel].)

Each of these prongs poses an independent hurdle to deposing an adversary's counsel; any one of them may be sufficient to defeat the attempted attorney deposition.

Without question, the proponent has the burden of proof to establish the predicate circumstances for the first two prongs. But California has not directly addressed the issue of which party has the burden of proof to establish the third prong, that the deposition would (or would not) impinge upon privileged information. One federal court, in implementing the three-prong test, has placed the burden of establishing the applicability of the attorney-client privilege and the work product doctrine on the party opposing discovery. "[T]he one asserting the work-product and attorney-client privileges has the burden of demonstrating the applicability of those privileges to the specific items which he claims are not subject to discovery." (*First Sec. Sav. v. Kansas Bankers Sur. Co.* (D.Neb. 1987) 115 F.R.D. 181, 182.)

We agree. Parties claiming the benefit of the work product rule have the burden to show preliminary facts to support its applicability. (*Fellows v. Superior Court* (1980) 108 Cal.App.3d 55, 67 [166 Cal.Rptr. 274].) "The fact that an attorney is the subject of the discovery request does not warrant

reallocating the burden of proof, because then the party asserting the privilege could effectively decide the question for itself. The facts supporting the claim of privilege are uniquely and solely within the control of the party asserting it . . . ." (Flynn, Jr., *supra*, 93 Colum. L.Rev. at pp. 1979–1980.)

### III

■ Applying the three-prong test, we conclude that plaintiffs have not rebutted the presumption against noticing Wroten's deposition. To the contrary, plaintiffs have failed to show that (1) they lack other practicable means of obtaining this information, and (2) such information is crucial to their case. Moreover, even had plaintiffs met their burden of proof on these two prongs (which they haven't), Carehouse has met its burden on the third prong by demonstrating that Wroten's deposition seeks material covered by the work-product doctrine.

Plaintiffs have access to the same underlying documentation as did Carehouse, and so cannot satisfy the first prong. Indeed, plaintiffs' arguments below focused on "ease," not "necessity." Plaintiffs contended that Carehouse should disclose the ratios because "it's easy for them to do, since they've already [done] it in response to the request for admissions. Now it's just a matter of saying, oh, here's the number. So it's very easy for them to do."

■ That is not a sufficient showing of "extremely" good cause to justify an attorney deposition. (*Spectra-Physics, supra*, 198 Cal.App.3d at p. 1494.) California does not allow opposing counsel to be deposed simply for "the picking of his brains." (*Trade Center, supra*, 185 Cal.App.2d at p. 411.) " '[D]iscovery may be limited or denied when the facts indicate that "one *litigant* is attempting to take advantage of the other" or that there is "an abusive attempt to 'ride free' on the *opponent's* industry." [Citation.]' " (*Dowden v. Superior Court* (1999) 73 Cal.App.4th 126, 133 [86 Cal.Rptr.2d 180] (*Dowden*).)

In a leading national case (cited with approval in *Spectra-Physics*), the Eighth Circuit refused to allow defense counsel's deposition in an automobile rollover case. (*Shelton v. American Motors Corp.* (8th Cir. 1986) 805 F.2d 1323.) Through the deposition, the victims hoped to ascertain which of the manufacturer's voluminous documents counsel had selected to prepare her defense. The court rejected the effort to lighten their load: "Undoubtedly, counsel's task in preparing for trial would be much easier if he could dispense with interrogatories, document requests, and depositions of lay persons, and simply depose opposing counsel in an attempt to identify the information that opposing counsel has decided is relevant and important to his legal theories and strategy. The practice of forcing trial counsel to testify

as a witness, however, has long been discouraged . . . and recognized as disrupting the adversarial nature of our judicial system . . . ." (*Id.* at p. 1327.)

Or, as another federal judge put it: "[A] party shouldn't be able to use a deposition to sucker-punch the other side's quarterback or listen in on the other side's huddle." (*Cascone v. Niles Home for Children* (W.D.Mo. 1995) 897 F.Supp. 1263, 1267.)

As to the second prong, plaintiffs say they need Wroten's deposition to "confirm and verify" her calculations "in the same manner as [she] calculated the ratios. . . ." Wroten could not be heard to complain because she "created this situation on her own. By doing so, she has represented to Respondent Court and to [plaintiffs] that she is an expert with superior knowledge of how nursing staff ratios should be calculated."

■ The argument is a fallacy, and, if taken to its logical conclusion, would permit the deposition of an attorney who used his or her impressions, conclusions, opinions or legal research or theories to assist the client's responses to requests for admissions. Wroten is an advocate, not an expert witness. Since she (quite understandably) has not been designated as an expert to testify at trial, her deposition is irrelevant, and her opinions are not evidence. (*Hernandez v. Superior Court* (2003) 112 Cal.App.4th 285, 297 [4 Cal.Rptr.3d 883] ["The opinions of experts who have not been designated as trial witnesses are protected by the attorney work product rule"].)

■ Third (although unnecessary to our decision on the propriety of Wroten's deposition), Carehouse has shown that the information sought is protected work product. At the hearing on the motion, Wroten detailed the subjectivity of her decisionmaking process in preparing a writing regarding how to classify Carehouse's employees during the pertinent times for purpose of ascertaining the daily staffing ratios. This information is of a derivative character, and did not exist independently of her pretrial efforts to prepare discovery responses. As such, it reflects her "impressions, conclusions, opinions, or legal research or theories . . . ." and is not discoverable "under any circumstances." (Code Civ. Proc., § 2018.030, subd. (a).) As Justice Rylaarsdam has stated, "In determining whether particular matter is privileged as work product, the reviewing court should be guided by the underlying policies of section 2018. Specifically, the policy of promoting diligence in preparing one's own case, rather than depending on an adversary's efforts." (*Dowden, supra*, 73 Cal.App.4th at p. 135.)

Plaintiffs minimize what they seek as nothing more than "mathematical calculations," rather than legal theories or thought processes. "Mathematical calculations do not involve an attorney's impressions or conclusions." According to plaintiffs, the regulatory statutes detail "in plain language the

persons who should be included when calculating nursing hours. This does not require the impressions or conclusions of [Carehouse's] counsel."

Plaintiffs have not cited us to any cases that hold that mathematical "calculations," standing alone, may not qualify as work product. Such calculations reflect Wroten's industry and work effort during the litigation, and plaintiffs' counsel has indicated his intent to probe her methodology and reasoning: "I don't know what she used. I don't know how she did it and I want to know her conclusions." This involves protected work product. "To answer even seemingly mundane questions may cause trial attorneys to rely on confidential information acquired from clients or may impliedly hint at clients' trial strategy by the way they answer questions." (Pope & Lee, *Discovery on Wits "Borrowed from the Adversary" Deposition of the Trial Attorney* (1998) 65 Def. Couns. J. 285, 286.)

As in *Spectra-Physics*, plaintiffs' showing "simply does not justify this unpalatable procedure which erodes the adversary system and adds to the already burdensome time and costs" of the litigation. (*Spectra-Physics, supra*, 198 Cal.App.3d at pp. 1497–1498.) Plaintiffs have not shown "extremely good cause" for Wroten's deposition because "the likelihood the attorney will assert claims of work product and attorney-client privilege is great, and therefore, as already stated, the usefulness of the procedure is questionable." (*Id.* at p. 1494.)

IV

Respondent court ran afoul of clear legal principles in requiring the deposition of Carehouse's trial counsel given the compelling policy reasons against such a deposition. In *Spectra-Physics, supra*, 198 Cal.App.3d 1487, the Court of Appeal went so far as to issue a peremptory writ in the first instance to direct the trial court to vacate its order permitting the deposition of defense counsel to be taken. Writ relief was particularly appropriate "because the damage done by improperly allowing such discovery cannot readily be cured after it has occurred." (*Id.* at p. 1493.)

*Spectra-Physics* articulated the governing legal principles which plainly apply here. In light of *Spectra-Physics*, plaintiffs' failure to rebut the presumption against Wroten's deposition is so obvious that no purpose could be served by plenary consideration of the issue. (Code Civ. Proc., § 1088; *Lewis v. Superior Court* (1999) 19 Cal.4th 1232, 1260 [82 Cal.Rptr.2d 85, 970 P.2d 872].)

Let a peremptory writ of mandate issue directing respondent court to vacate its order of July 26, 2006, and to make a new and different order

denying plaintiffs' motion to compel further responses to special interrogatory number 33 and ordering that Wroten's deposition not be taken. Our temporary stay shall remain in effect until this opinion becomes final.

No costs are awarded for this interim proceeding, but may be allowed to the party ultimately prevailing in the discretion of the superior court.

O'Leary, J., and Ikola, J., concurred.