Filed 8/23/22  RJS Financial v. Dos Potrillos CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| RJS FINANCIAL, INC., | B316465 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 20STCV43490) |
| v. | |
| DOS POTRILLOS LLC et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Terry A. Green, Judge.  Affirmed.

Law Office of Nick A. Alden and Nick A. Alden for Defendants and Appellants.

Anderson, McPharlin & Conners, Elmira R. Howard and Ali Z. Vaqar for Plaintiff and Respondent.

_____

Counsel for plaintiff and respondent RJS Financial, Inc. (RJS), inadvertently forwarded a privileged e-mail to opposing counsel, Nick A. Alden (Alden) and the Law Office of Nick A. Alden (collectively the Alden firm). When the Alden firm failed to delete the privileged e-mail, and in fact used it in court proceedings, RJS brought a motion to disqualify the Alden firm from representing defendants and appellants Dos Potrillos LLC and David A. Romero, individually and as trustee of the Laguna Seca Living Trust, in this matter. The trial court granted RJS's motion, and defendants appeal.

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

*Factual Background*

RJS initiated this action to establish the enforceability of a mortgage on real property owned by defendants. Defendants in turn allege that the terms of the loan were illegal.[1]

RJS hired Richard D. Marks (Marks) to be its attorney of record in this matter. RJS had also hired Frandzel Robins Bloom

---

[1] The appellate record presented is incomplete, rendering the procedural history of this case unclear. After the complaint was filed and served, defendants' defaults seem to have been entered. But they were able to file an answer and cross-complaint. On August 23, 2021, defendants filed a motion to set aside their defaults (although they did not concede that their defaults had in fact been entered). That same day, RJS filed a motion to strike defendants' answer on the grounds that their defaults had been entered. RJS also opposed defendants' motion to set aside their defaults. Ultimately, the trial court granted defendants' motion to set aside defendants' defaults and denied RJS's motion to strike.

2

& Csato, L.C., and Brett L. McClure (McClure) to represent its interests in this case. The Alden firm represented defendants.

On August 3, 2021, Marks inadvertently forwarded an e-mail between himself and McClure to Alden. The e-mail contained attorney-client privileged information and/or material covered by the work product doctrine related to matters in this case.[2] At the time, Marks was still counsel of record for RJS.

Within two hours, Marks sent an e-mail to Alden, stating: "An unintentional and inadvertent e-mail to you from me today . . . included communications from counsel for RJS to me that were privileged and not intended to be sent to you. Under the Rules of Professional Conduct, I request that you delete in its entirety the entire email, refrain from reading the email, and disregard the contents." Marks's e-mail also drew Alden's attention to *Rico v. Mitsubishi Motors Corp.* (2007) 42 Cal.4th 807 (*Rico*) and *State Comp. Ins. Fund v. WPS, Inc.* (1999) 70 Cal.App.4th 644 (*State Fund*). The e-mail continued: "I know that you are an honorable attorney at law having practiced in Southern California almost as long as the undersigned. So, I assume that the email will be deleted by you and not saved or printed out. And, of course, you cannot use the communication as evidence in this case. [¶] I do apologize for the unintended email. In my haste to respond to you, I did not look carefully at the emails that followed mine to you. [¶] Please confirm that you will comply with the Rules of Professional Conduct, *Rico* and *State* [*Fund*]."

---

[2] We have carefully reviewed the subject e-mail. Given our conclusion that it is privileged, we decline to quote it.

3

"Despite receiving notice of the inadvertent disclosure and demand to delete and destroy the privileged communication, the Alden Firm . . . refused to do so." In fact, the Alden firm repeatedly used the e-mail in public filings and court hearings.

*Motion for Disqualification*

On October 6, 2021, RJS filed a motion seeking to disqualify the Alden firm. According to McClure's declaration filed in connection with RJS's reply brief: "The privileged email which is the subject of RJS'[s] motion to disqualify . . . contains my thoughts and impressions and legal strategy as an attorney for RJS as well as instructions from RJS to its counsel, Mr. Marks. I intended the subject email to be completely privileged and confidential, including under the work product doctrine and attorney-client privilege." RJS argued that the Alden firm's refusal to delete the privileged communication, coupled with its use and dissemination of it, constituted unethical conduct and compelled disqualification.

Defendants opposed the motion, arguing that the communication was not confidential because (1) the information contained therein was taken from public records, and (2) it was between two attorneys representing conflicting interests.

*Hearing on RJS's Motion*

The parties appeared for the hearing on November 3, 2021. At the onset of the hearing,[3] the trial court noted: "Well, this is a bit disturbing Mr. Alden. I read this, and it appears you've got clearly what was an attorney-client communication. You got it

---

[3] We grant RJS's motion to augment the appellate record with a copy of the reporter's transcript of the November 3, 2021, hearing on its motion to disqualify the Alden firm.

from essentially in-house counsel to outside counsel directing how to deal with the case. And the one counsel was expressing displeasure at the way the—directed the plaintiff's counsel was handling the case and gave instructions. I mean, it's a classic attorney-client communication. It's obvious on its face."

The trial court continued by noting that it had never inadvertently received an attorney-client communication, but if it had, its "instincts would be to return it immediately to counsel because that's what I would want if the situation was reversed.

"But instead, you seized upon this communication, and not only didn't return it after being notified, but used it in court apparently taking the position that it showed the hypocrisy on the part of the opposing party and that the opposing party didn't really have that much confidence in the case they were presenting to the court.

"I don't know what to say. I mean, I'm rather shocked, actually. This is a – this is a substantial breach. You know, the Rules of Professional Conduct exist as a default position. How we treat each other as professionals should be intuitive. . . . [¶] . . .

"I'm sure, Mr. Alden, if through sheer inadvertence, an attorney-client communication by you was sent to an opposing party by accident, that you would expect the opposing party to return it immediately. I would expect that.

"I don't understand why you took a course of action like this, that not only not return it, but to use it in court against them."

Thereafter, the trial court entertained oral argument; ultimately, it indicated that it would be granting RJS's motion.

*Trial Court Order*

On November 5, 2021, the trial court issued its written order granting RJS's motion. It found: "The facts underlying this motion are undisputed. On August 3, 2021, Defense counsel received an email that was not meant for him. The email was sent by Mr. Brett L. McClure and addressed to Mr. Richard Marks, who accidentally forwarded it to Mr. Alden. At the time, Mr. Marks and Mr. McClure were both known to be counsel for Plaintiff. Mr. Marks was insurance counsel, hired by a title company to represent Plaintiff; his name appears on the caption of Plaintiff's Complaint and all subsequent pleadings prior to his substitution out of the case. Mr. McClure was Plaintiff's direct counsel, in a position analogous to that of an in-house attorney.

"The email stated that Mr. McClure had reviewed the docket in this case and was not impressed with Mr. Marks's work, since a series of filings had been rejected over a time span of six months. Mr. McClure conveyed his impression of the legal risks to which he feared this had exposed Plaintiff, and expressed his displeasure with those risks. The email closes with a direct client instruction . . . to negotiate a settlement of the case.

"2 hours and 19 minutes after this email was forwarded to Mr. Alden, counsel for Plaintiff realized their mistake and sent a follow-up note, identifying the email by precise date and time and explaining that it contained privileged material. Counsel for Plaintiff asked Mr. Alden to delete the email and disregard the contents. Instead, Mr. Alden chose to submit the email as evidence in multiple court filings and to quote from it in open court during a subsequent hearing.

"The email Mr. Alden received is clearly and on its face a privileged communication. It contains the legal impressions and

6

analysis of in-house counsel, followed by a direct client instruction to outside counsel. Even a cursory review of the email would lead any reasonable counsel to believe that their ethical obligations under Rule 4.4 had been triggered, with or without any subsequent warning or request from opposing counsel. But in this case, a warning and a request for deletion was provided almost immediately. There could be no doubt that this was a privileged communication, which Mr. Alden was obligated to delete and disregard. Yet he did not."

The trial court then turned to the question of whether to remove the Alden firm from the case. "Removal of counsel by court order at the behest of the opposition is a serious matter. Defendants rightly point out that they are entitled to their choice of counsel. But this is a serious ethical violation, and counsel of Mr. Alden's experience and standing should have known better. Any counsel, no matter their experience or lack thereof, should have been able to tell that the email Mr. Alden received was privileged. His decision, not only to retain the email but repeatedly make it part of the public record in an effort to hold privileged statements against the Plaintiff, directly undermines the integrity of these proceedings. No lesser or alternative remedy than disqualification has been proposed by either side, and disqualification is appropriate under these circumstances." (Fn. omitted.)

While the trial court disqualified the Alden firm, it denied plaintiff's request for monetary sanctions, noting: "[T]he court's power to disqualify counsel is protective in nature, based on the need to safeguard both the actual and apparent integrity of the proceedings in each case. With Defense counsel now out of the case, that protective interest has been served. An award of

7

monetary sanctions against counsel would be more punitive than protective in nature. The power to discipline attorneys lies with other agencies than the Superior Court. How they choose to proceed (or not) is up to them."

*Appeal*

Defendants filed a notice of appeal from the trial court's November 9, 2021, order disqualifying the Alden firm.

*Motion to Stay Proceedings*

Despite being disqualified, the Alden firm continued to actively represent defendants in this litigation. For example, on November 19, 2021, it filed a first amended cross-complaint on defendants' behalf against RJS. The Alden firm's conduct prompted RJS to file a motion to stay the proceedings pending defendants' appeal from the order disqualifying the Alden firm. On January 26, 2022, the trial court granted RJS's motion to stay the proceedings.

Defendants' petition for a writ of mandate was summarily denied.

## DISCUSSION

I. *Scope of this appeal*

As set forth above, defendants have only filed a notice of appeal challenging the trial court's order disqualifying the Alden firm. In fact, in their opening brief, defendants specifically recognize that the only order on appeal is the disqualification order. Nevertheless, defendants devote much time and argument in their appellate briefs to issues outside the scope of this appeal. We decline to address these issues. (*Soldate v. Fidelity National Financial, Inc.* (1998) 62 Cal.App.4th 1069, 1073 ["'Our jurisdiction on appeal is limited in scope to the notice of appeal and the judgment or order appealed from'"].)

8

With that in mind, we turn to the propriety of the trial court's order disqualifying the Alden firm from representing defendants in this litigation.

II. *Standards of review*

We ordinarily review an order granting a motion to disqualify under the deferential abuse of discretion standard, and any subsidiary factual questions for substantial evidence. (*McDermott Will & Emery LLP v. Superior Court* (2017) 10 Cal.App.5th 1083, 1117, 1121 (*McDermott*); *Rico*, *supra*, 42 Cal.4th at p. 819.) But where the material facts are undisputed, our review is de novo. (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1148.)

"'The question whether the attorney-client privilege applies to a particular communication is a question of fact if the evidence is in conflict.' [Citation.] "When the facts, or reasonable inferences from the facts, shown in support of or in opposition to the claim of privilege are in conflict, the determination of whether the evidence supports one conclusion or the other is for the trial court, and a reviewing court may not disturb such finding if there is any substantial evidence to support it . . . .'" [Citation.]" (*DP Pham LLC v. Cheadle* (2016) 246 Cal.App.4th 653, 664.) Likewise, "[w]e review the trial court's conclusion that a document is protected by the attorney work product doctrine to determine whether it is supported by substantial evidence. [Citations.]" (*League of California Cities v. Superior Court* (2015) 241 Cal.App.4th 976, 993.)

III. *Relevant law*

    A. <u>Privilege</u>

"'The party claiming the [attorney-client] privilege has the burden of establishing the preliminary facts necessary to support its exercise, i.e., a communication made in the course of an attorney-client relationship. [Citations.] Once that party establishes facts necessary to support a prima facie claim of privilege, the communication is presumed to have been made in confidence and the opposition of the claim of privilege has the burden of proof to establish the communication was not confidential or that the privilege does not for other reasons apply.' [Citations.]" (*DP Pham LLC v. Cheadle*, *supra*, 246 Cal.App.4th at p. 665.)

"A writing that reflects an attorney's impressions, conclusions, opinions, or legal research or theories is not discoverable under any circumstances." (Cal. Code Civ. Proc., § 2018.030, subd. (a).) "Parties claiming the benefit of the work product rule have the burden to show preliminary facts to support its applicability." (*Carehouse Convalescent Hospital v. Superior Court* (2006) 143 Cal.App.4th 1558, 1563.)

    B. <u>Disqualification of counsel</u>

Trial courts have the power to disqualify counsel as part of their inherent authority to control the proceedings before them. (*In re Complex Asbestos Litigation* (1991) 232 Cal.App.3d 572, 585.) Among other instances, disqualification of counsel may be warranted if (1) counsel does not comply with the procedures set forth in *State Fund*, which are also now codified in rule 4.4 of the California Rules of Professional Conduct, for what to do if counsel inadvertently receives privileged documents, and (2) "other

10

factors compel disqualification." (*State Fund*, *supra*, 70 Cal.App.4th at p. 657; *Rico*, *supra*, 42 Cal.4th at pp. 817, 819.)

The procedures set forth in *State Fund* apply when a lawyer "inadvertent[ly]" receives materials that objectively "appear to be subject to an attorney-client privilege" or to be otherwise "confidential and privileged" (*State Fund*, *supra*, 70 Cal.App.4th at pp. 656–657; *Rico*, *supra,* 42 Cal.4th at p. 818), but those procedures vary depending on the degree to which the privileged or confidential nature of the materials is obvious (*McDermott*, *supra*, 10 Cal.App.5th at pp. 1108–1109): "[W]hen an attorney receives materials that obviously or clearly appear to be privileged . . . ," the attorney must "refrain from examining them any more than . . . necessary," must notify the privilege holder, and must try to resolve the situation by agreement or, failing that, by resort to the court (*id*. at p. 1108; *State Fund*, at pp. 656–657); however, when the materials received are "not obviously or clearly privileged," the attorney's duties are "more limited" and he or she need only "notify the privilege holder," who at that point has the "onus" of "tak[ing] appropriate steps to protect the materials if the holder believes [they] are privileged and were inadvertently disclosed" (*McDermott*, at pp. 1108–1109; see *Great Am. Assur. Co. v. Liberty Surplus Ins. Corp.* (N.D. Cal. 2009) 669 F.Supp.2d 1084, 1093–1094).

IV. *Analysis*

Applying these legal principles, we conclude that the trial court properly granted RJS's motion to disqualify the Alden firm. The forwarded e-mail obviously is protected by the attorney-client privilege and/or contains protected attorney work product. It is a communication between Marks and McClure, two attorneys representing RJS. It sets forth McClure's criticism of

11

Marks's representation of RJS in this matter. And, McClure gives instructions to Marks to settle the case immediately. Upon receipt, Alden should have immediately notified RJS's attorneys that he received a confidential communication not intended for him or his clients.

Defendants contend that the e-mail was not obviously privileged because neither they nor Alden knew at that time that McClure also represented RJS (or was an agent of RJS). Even if that is true, within two hours of inadvertently sending it to Alden, Marks notified Alden of his unintentional error, reminded him of the law regarding inadvertent receipt of attorney work product, asked him to delete the e-mail and not use it as evidence, and apologized. Despite the rapid advisement from Marks, Alden did not delete the e-mail. Worse, he affirmatively used the privileged communication in court filings. As the trial court aptly found, Alden's misconduct constitutes a "serious ethical violation," warranting disqualification.

Defendants' arguments on appeal wholly lack merit. For example, they argue that "even if the email was to be considered a privileged communication, that privilege was lost by [being] communicated to others." Regardless of who held the privilege over the e-mail,[4] "waiver requires an intention to voluntarily waive a known right." (*McDermott*, *supra*, 10 Cal.App.5th at p. 1104.) Here there is no evidence that RJS or its attorneys

---

[4] "The attorney, not the client, is the exclusive holder of the work product privilege." (*Melendrez v. Superior Court* (2013) 215 Cal.App.4th 1343, 1353.) "The attorney-client privilege, however, is held by the client." (*Ibid.*)

intentionally waived either the attorney-client or work product privilege.[5]

Defendants further argue that the e-mail was not privileged because it discussed defaults, information about which could be gleaned from the publicly available court docket. But, it is the nature of the communication, not the information, that determines whether a communication is privileged. "The attorney-client privilege attaches to a confidential communication between the attorney and the client and bars discovery of the communication irrespective of whether it includes unprivileged material." (*Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 734.)

Citing *Fremont Indemnity Co. v. Fremont General Corp.* (2006) 143 Cal.App.4th 50, 69 and *Khani v. Ford Motor Co.* (2013) 215 Cal.App.4th 916, 921–922, defendants assert that because the e-mail is not material to this litigation, the Alden firm should not have been disqualified. Defendants' reliance upon these two cases is misplaced; those cases address successive and concurrent representation of clients with adverse interests. (*Khani v. Ford Motor Co.*, *supra*, at p. 920; *Fremont Indemnity Co. v. Fremont General Corp.*, *supra*, at pp. 65–67.) They did not address the issue presented in this case. (*Association for Los Angeles Deputy Sheriffs v. County of Los Angeles* (2021) 60 Cal.App.5th 327, 342

---

[5]      Defendants assert that there is no evidence that the e-mail was sent inadvertently as there is no declaration from Marks attesting to this fact. We disagree. Marks's follow-up e-mail to Alden evinces inadvertence. The fact that Marks intentionally sent Alden other e-mails that day does not mean that he intentionally sent this one.

13

["A case is not authority for a proposition not even mentioned, must less discussed, in it"].) Even if materiality were relevant to the issue presented here, the comments made by McClure to Marks concerning this matter, particularly the demand for a quick settlement, are highly material.

In addition, defendants contend that RJS failed to demonstrate "how the information contained in the email, assuming it is privileged, would or could affect the outcome of this case." We disagree with defendants' characterization of the contents of the e-mail. At the risk of sounding redundant, McClure's insistence that Marks immediately settle the case could absolutely affect the outcome of this case.

In a similar vein, defendants advance an absurd argument: "[N]ow that the 'cat is out of the bag' so to speak, what will prevent new counsel from taking advantage." As RJS points out, this approach "is completely at odds with California law and the Alden Firm's ethical obligations." Pursuant to well-settled legal authority and the California Rules of Professional Conduct, upon receipt of the e-mail, Alden should have immediately notified Marks, Alden should have deleted the e-mail, and Alden certainly should not have used it against RJS. His ethical violations let the cat out of the bag, so to speak.

Defendants further contend that RJS's motion to disqualify the Alden firm was an improper motion for reconsideration (Code Civ. Proc., § 1008) of two prior filings: (1) RJS's opposition to defendants' motion to set aside their defaults, and (2) RJS's motion to strike defendants' answer and cross-complaint. Defendants did not raise this argument below, thereby forfeiting it on appeal. (*P&D Consultants, Inc. v. City of Carlsbad* (2010) 190 Cal.App.4th 1332, 1344.) Regardless, defendants have not

demonstrated how the motion to disqualify constitutes an improper motion for reconsideration. The motion to strike does not even mention the privileged e-mail. And, in its opposition to defendants' motion to set aside their defaults, RJS objected to defendants' use of the privileged e-mail in support of their motion and advised the trial court that it would "be filing a formal motion for disqualification and sanctions."

Finally, we reject defendants' unfounded argument that RJS only filed the motion to disqualify because it knows that defendants "lack the financial means to hire a new counsel." Defendants not only offer no evidence in support of this claim, but they also fail to provide any legal authority for the proposition that a party's motivation for filing a motion to disqualify counsel for ethical violations is relevant.

V. *Referral to State Bar*

Canon 3(D)(2) of the California Code of Judicial Ethics provides: "Whenever a judge has personal knowledge, or concludes in a judicial decision, that a lawyer has committed misconduct or has violated any provision of the Rules of Professional Conduct, the judge shall take appropriate corrective action, which may include reporting the violation to the appropriate authority." In light of Alden's egregious misconduct, we refer this matter to the State Bar.

## DISPOSITION

The order granting RJS's motion to disqualify Nick A. Alden and the Law Office of Nick A. Alden is affirmed. The clerk of this court is ordered to forward a copy of this opinion to the California State Bar upon issuance of the remittitur. RJS is entitled to costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
ASHMANN-GERST


We concur:


_____, P. J.
LUI


_____, J.
HOFFSTADT