**Delores BROWN, Petitioner-Appellant,**

v.

**Clarence TRIGG and Indiana Attorney General, Respondents-Appellees.**

**No. 85–2449.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 13, 1986.

Decided May 28, 1986.

---

Thomas M. Leatherman, Mehl, Mehl, Beeson & Leatherman, Goshen, Ind., for petitioner-appellant.

Robert B. Wente, Atty. General's Office, Indianapolis, Ind., for respondents-appellees.

Before CUDAHY and COFFEY, Circuit Judges, and EVANS, District Judge.*

TERENCE T. EVANS, District Judge.

Delores Brown was convicted of two counts of felony murder in the Circuit Court of Elkhart County, Indiana. The convictions were affirmed by the Indiana Supreme Court, *Brown v. State*, 448 N.E.2d 10 (Ind.1983). Brown's petition for the issuance of a writ of habeas corpus was denied by the United States District Court for the Northern District of Indiana. She is here appealing the district court's denial of her petition. We affirm.

Two issues are before us on this appeal: first, whether the state court improperly excluded psychological evidence regarding Brown's mental capacity; and second, whether the trial court improperly admitted, during the trial, the testimony that a polygraph examiner hired by Brown's attorney had given during a juvenile court waiver hearing. That hearing resulted in Brown, a juvenile at the time the crimes

---

* The Honorable Terence T. Evans, District Judge for the Eastern District of Wisconsin, is sitting by designation.

were committed, being waived to adult court for trial.

The charges against Brown arose out of the tragic events that occurred on September 2, 1980. At that time Brown was 16 years old and the mother of a small child. She lived with her own mother and two younger brothers in a two story frame house in Elkhart, Indiana. Apparently Brown's relationship with her mother was not the best. Brown and her mother often argued over such things as Brown's current boyfriend, and her school attendance and performance. On September 2, Brown, who was a high school sophomore, went to school in the morning but left without permission at 11 a.m. She returned home at 5 p.m., and was confronted by her mother regarding her unauthorized absence from school. An argument followed. While this was going on, unbeknownst to her mother, Brown had made plans to leave home with her child and her boyfriend. They planned to go to Pontiac, Michigan, where her boyfriend had a job and an apartment. In preparation for departure, Brown had packed a couple of suitcases with things for herself and her baby. The items were stored in her mother's car.

At approximately 10 p.m. that evening, after her brothers and mother had gone to bed, Brown brought a can of gasoline into the house. She then either intentionally poured or accidentally spilled some gas on the living room carpet. Brown said that she tried to wipe up some of the gasoline, but then struck a match and lit the gasoline-soaked carpet. She says she then tried to smother the fire with a blanket, but that it quickly spread out of control. There was also testimony to the effect that she tried to alert her sleeping brothers but failed. She then grabbed her child and some clothes and ran from the house. Her mother also escaped, but her brothers died.

■ If death results, a person may be convicted in Indiana of felony murder for knowingly committing arson under circumstances that endanger human life. A person acts "knowingly" if, when he "... engages in the conduct, he is aware of a high probability that he is doing so." I.C. § 35–41–2–2–(b). The jury, convinced that Brown committed the crimes as charged, found her guilty of two counts of felony murder.

■ At the trial, Brown attempted to introduce intelligence test scores and other psychological evidence in an effort to show that she did not know, at the time she started the fire, that she would endanger human life. The psychological evidence, she maintains, would have tended to show that she functioned at a fourth grade level, had an IQ of 78, and was borderline mentally retarded. The trial court excluded the evidence, reasoning that it was irrelevant because Brown had not raised an insanity defense, and because Indiana does not recognize a diminished capacity defense. Brown contends that by excluding the evidence the trial court unconstitutionally denied her the opportunity to demonstrate that she did not act "knowingly."

Brown claims that Indiana law and the trial court's ruling deprived her of her constitutional right to rebut the prosecution's proof on an element of the offense charged. Our review of her contention is guided by *Muench v. Israel*, 715 F.2d 1124 (7th Cir.1983). We held in *Muench* that a state is not constitutionally compelled to recognize the defense of diminished capacity. The petitioners in *Muench* were not permitted to introduce psychiatric testimony for the purpose of proving they lacked the capacity to form intent because of mental defect. The rationale for this rule is the questionable utility of psychiatric and psychological evidence in assessing the effect of a mental condition (in *Muench* it was an "inadequate personality") on the capacity to form intent at the time a crime is committed. 715 F.2d at 1144, see also *Campbell v. Wainwright*, 738 F.2d 1573 (11th Cir.1984); *United States v. Kepreos*, 759 F.2d 961 (1st Cir.1985), *cert. denied* —— U.S. ——, 106 S.Ct. 227, 88 L.Ed.2d 227. We see no reason why Brown's proffered evidence, her 78 IQ for instance, would not be of similar questionable utility. Were this evidence to be admitted, one might

wonder where the road would lead. It is not too farfetched, for example, to picture the state, in rebutting this evidence, calling to the stand an educator who would testify to the unreliability of IQ tests as being culturally slanted against some members of society. The dissent, in urging that the evidence be received, notes that the issue "... is the use of standard IQ tests to establish defendant's intellectual and psycho-educational function level." We believe, however, that the guilt determining phase of criminal court proceedings is not the place where this kind of venture into the murky world of academic testing should be pursued. The state court, we believe, did not abuse its discretion in excluding the psychological evidence that was offered here.

The second claim concerns Brown's contention that the trial court improperly admitted the testimony of Delbert Thornberg, who was hired by her attorney to administer a polygraph examination, to use in connection with the juvenile court waiver hearing. At trial, the state called Thornberg as a witness in its case-in-chief. He testified, as he had done at the waiver hearing, about what Brown told him during the course of his interview with her. The trial court excluded all references to the circumstances of the interview and the polygraph examination itself. Thornberg's testimony, in which he told the jury that Brown said she intended to light a small fire to demonstrate her anger to her mother, was, quite naturally, damaging to Brown.

■ Brown claims that the Thornberg testimony was protected by the attorney-client privilege and the attorney work-product doctrine. She further contends that Indiana public policy forbids the use of testimony developed for use at a juvenile court proceeding in an adult criminal trial. This latter contention is easily disposed of. Ind. Code § 31–6–8–1 provides:

> (c) The juvenile court may grant any person having a legitimate interest in the work of the court or in a particular case access to the court's legal records. In exercising its discretion, the court shall

consider that the best interests of the safety and welfare of the community are generally served by the public's ability to obtain information about:

> (1) The alleged commission of an act that would be murder or a felony if committed by an adult; ...

The Indiana Supreme Court found that the admission of Thornberg's testimony did not violate Indiana public policy or statutory law. It is not our place to question this construction of Indiana law.

■ Brown's argument based on attorney-client privilege and work-product also must fail. Brown's counsel hired Thornberg to administer a polygraph and testify at the juvenile court waiver hearing. Thornberg was an agent of Brown's attorney, and as such was protected by the attorney-client privilege. *United States v. Nobles,* 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975). The attorney-client privilege and work-product doctrine may, of course, be waived. The facts of *Nobles* are similar to those of the instant case. In *Nobles,* defendant hired a private investigator whom he called to testify at trial. By electing to present the investigator as a witness, the defendant waived his attorney-client privilege as to information collected by the investigator for the defendant and his attorney. Here, the actions of Brown and her attorney resulted in a waiver of the attorney-client privilege and the work-product doctrine.

Brown attempts to analogize her situation to that presented by *Simmons v. United States,* 390 U.S. 377, 394, 88 S.Ct. 967, 976, 19 L.Ed.2d 1247 (1968), in which the Supreme Court held that where a defendant testifies in support of a motion to suppress evidence, that testimony may not be thereafter admitted against him at trial on the issue of guilt. Brown contends that by admitting Thornberg's testimony at trial, the court has placed juvenile court defendants facing waiver in the untenable position of having to choose between presenting vital information to the juvenile court in order to prevent waiver and having that possibly incriminating evidence introduced

**602**

at trial, or not presenting the evidence at all. While this dilemma exists, it does not rise to the level of a constitutional problem. In *Simmons*, the defendant was presented with the dilemma of surrendering one constitutional right in order to avoid the waiver of another. The *Simmons* holding teaches that a defendant cannot be forced to choose between constitutional rights. The *Simmons* rule, quite obviously, does not extend to witnesses called by a defendant at a pretrial hearing. Also, because there is no constitutional right to the confidentiality of juvenile court proceedings, the petitioner must lose her argument on this point.

The district court's denial of petitioner's writ of habeas corpus is affirmed.

CUDAHY, Circuit Judge, concurring in part and dissenting in part:

This case is quite different from *Muench v. Israel*, 715 F.2d 1124 (7th Cir.1983), *cert. denied sub nom. Worthing v. Israel*, 467 U.S. 1228, 104 S.Ct. 2682, 81 L.Ed.2d 878 (1984), which excluded psychiatric opinion testimony that the defendant in that case suffered from a personality disturbance and thus was incapable of forming the intent necessary to commit the crime charged. Here the issue is the use of standard IQ tests to establish defendant's intellectual and psycho-educational function level. These tests would have indicated that defendant generally functioned five years below her grade level, had an IQ of 78 and was borderline mentally retarded. Certainly such tests are far more widely recognized as reliable and probative than are the opinions of psychiatrists about the relation of personality disorders to the formation of criminal intent. Because these tests were ordered by the juvenile court and admitted into evidence for the purpose of binding Brown over for trial as an adult (and their competency and relevancy were thus recognized as a matter of state law), they should have been admitted on the subsequent issue of her knowledge of the possible consequences of her actions. *See Chambers v. Mississippi*, 410 U.S. 284,

294, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297 (1973); *Washington v. Texas*, 388 U.S. 14, 17–23, 87 S.Ct. 1920, 1922–25, 18 L.Ed.2d 1019 (1967). Of course, it is a close question whether this evidentiary exclusion amounted to constitutional error that was not harmless. Nonetheless, I would respectfully dissent on this point.