## SECURITIES AND EXCHANGE COMMISSION, Plaintiff,

v.

## Dean L. BUNTROCK, Phillip B. Rooney, James E. Koenig, Thomas C. Hau, Herbert A. Getz, and Bruce D. Tobecksen, Defendants.

### No. 02 C 2180.

United States District Court, N.D. Illinois, Eastern Division.

Sept. 8, 2003.

---

See also 2003 WL 260681.

Assistant United States Attorney, United States Attorney's Office, John E. Birkenheier, Securities & Exchange Commission, Chicago, IL, John D. Worland, Jr., Richard B. Skaff, Robert Blair Kaplan, Robert William Pommer, U.S. Securities & Exchange Commission, Washington, D.C., for Plaintiff.

Francis James Higgins, Peter G. Rush, Paul J. Walsen, Amy Suzanne Chasen, Bell, Boyd & Lloyd, Howard J. Rosenburg, Piper Rudnick, Chicago, IL, for Dean L. Buntrock.

## MEMORANDUM ORDER

BOBRICK, United States Magistrate Judge.

Before the court is the motion of plaintiff Securities and Exchange Commission ("SEC") for a protective order and to quash the Rule 30(b)(6) deposition notice of defendant Dean Buntrock.

## I. BACKGROUND

Plaintiff brought this action against Buntrock and other former officers of Waste Management, Inc. ("WMI") charging that they violated federal securities laws by defrauding the public for over five years by manipulating the company's stock price. According to the SEC's 138–page complaint, this resulted in a $1.7 billion accounting restatement—the largest in history at the time—and handsome profits for the defendant officers through inflated bonuses and insider trading. On May 23, 2003, Buntrock served the SEC with a Fed.R.Civ.P. 30(b)(6) notice of deposition. The rule allows that:

A party may in the party's notice and in a subpoena name as the deponent a public or private corporation or a partnership or association or governmental agency and describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. A subpoena shall advise a non-party organization of its duty to make such a designation. The persons so designated shall testify as to matters known or reasonably available to the organization. This subdivision (b)(6) does not preclude taking a deposition by any other procedure authorized in these rules.

Fed.R.Civ.P. 30(b)(6). Buntrock's notice would require the SEC to identify and produce for deposition a person who could testify on the commission's behalf and is knowledgeable as to twelve matters the notice delineates. The twelve matters basically involve the results of the SEC's investigation: the alleged false or misleading statements in WMI's quarterly reports or public statements for the years 1992 through the first three quarters of 1997, all alleged fraudulent accounting practices for that time span, each alleged violation of GAAP and why and how the GAAP was violated for that time span, the internal review of WMI's accounting practices taken up in the third quarter of 1997 and the 1998 restatement, communications between the SEC and accounting firms regarding the internal review of WMI's accounting practices undertaken in the third quarter of 1997 and its restatement, the roles of certain accounting firms in the SEC's investigation, the roles of certain SEC employees in the investigation, the extent of SEC reliance on work product of certain SEC employees while at the SEC and while in the private sector, and the role of the accounting firm of Arthur Andersen in WMI's restatement, and all alleged ill-gotten gains retained by the defendants during the pertinent time span. The SEC objects to this notice as it basically requires it to produce attorneys for deposition as the investigation was conducted by and at the direction of attorneys. The SEC calls the notice an improper attempt to depose opposing counsel about its case and an impermissible invasion into work product and other privileges.

In June of 2002, the SEC turned over to defendants 200 boxes of documents it received during its investigation. As of January, 2003, those materials were available in a searchable computer database. The SEC has also produced a twelve-page list of witnesses, investigative testimony from forty-nine witnesses and accompanying exhibits—also in a searchable database—and a seven-page explanation of the elements and calculation of the disgorgement sought from each defendant. The SEC has also provided defendants with evidence summaries from previous investigations and proceedings involving WMI's financial statements. Defendant's initial disclosure did not include any witness list naming the SEC or any SEC employee.

In March of 2003, the parties agreed to certain discovery procedures, beginning with an initial list of twenty witnesses per side for depositions, with five "priority" witnesses

whom the parties would depose first. The defendants' list did not include the SEC or any SEC employees, except for a member of the corporate finance division who was not among the five "priority" witnesses. The parties agreed depositions would begin May 7, 2003. While the SEC has taken three or four deposition since that time, Buntrock has not noticed a single deposition, with the exception of the general 30(b)(6) notice at issue here.

■ After a review of the parties submissions on this issue, the court finds that the 30(b)(6) notice is an inappropriate attempt to depose opposing counsel and to delve into the theories and opinions of SEC attorneys. Buntrock claims that it does not seek to depose opposing counsel, arguing that the SEC may designate any person under the rule. While this contention may be technically true, from a practical standpoint it is an unconvincing argument. The rule requires that the responding party make a conscientious good faith effort to designate the persons having knowledge of the matters sought by the [discovering party] and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed by [the discovering party] as to the relevant subject matters. *Buycks–Roberson v. Citibank Federal Sav. Bank,* 162 F.R.D. 338, 342 (N.D.Ill.1995). The investigation in this matter was conducted by SEC attorneys and by SEC employees working under the direction of attorneys. Thus, the 30(b)(6) notice would necessarily involve the testimony of attorneys assigned to this case, or require those attorneys to prepare other witnesses to testify. In *SEC v. Rosenfeld,* 1997 WL 576021, No. 97 Civ. 1467 (S.D.N.Y. Sept. 16, 1997), the court found that this amounted to an attempt to depose the attorney for the other side, because even if a non-attorney witness were designated, they would have to have been prepared by those who conducted the investigation, and that preparation would include disclosure of SEC attorneys' legal

and factual theories. The court's comments in *Rosenfeld* are applicable here:

> Although defendant is correct that a Rule 30(b)(6) witness is not required to have firsthand knowledge, and that discovery should be conducted as efficiently as possible, the notice of deposition clearly calls for the revealing of information gathered by the SEC attorneys in anticipation of bringing the instant enforcement proceedings, and if forced to designate witnesses to testify fully and completely concerning the matters described in the notice of deposition, testimony of SEC attorneys or examiners working under the direction of the SEC attorneys conducting the investigation would be necessary.

1997 WL 576021, *2. Courts have reached similar conclusions in *S.E.C. v. Morelli,* 143 F.R.D. 42 (S.D.N.Y.1992); and *E.E.O.C. v. HBE Corp.,* 157 F.R.D. 465 (E.D.Mo.1994).

Defendant Buntrock, however, calls into question the validity of the decision in Rosenfeld, calling it erroneous when compared with prior decisions concerning the application of Rule 30(b)(6). In support of its criticism of the Rosenfeld holding, Buntrock cites *Protective Nat'l Ins. Co. of Omaha v. Commonwealth Ins. Co.,* 137 F.R.D. 267, 278 (D.Neb. 1989); *Floe v. Plowden,* 10 F.R.D. 504, 506 (E.D.S.C.1950); *United States v. Lomar Discount Limited,* 61 F.R.D. 420, 422 (N.D.Ill. 1973); and *Allendale Mut. Ins. Co. v. Bull Data Sys.,* No. 91 C 6103, 1993 WL 20164 (N.D.Ill. Jan. 27, 1993). Only one of these cases, however, dealt with Rule 30(b)(6)— *Protective Nat'l Ins.*[1] While *Protective Nat'l Ins.* dealt with the appropriate subject matter for a deposition of an employee who had learned certain facts from her company's attorneys and certain facts in the course of her job duties as performed in the general course of the insurance business, it has little bearing on our concerns here. Here, we are dealing with the results of an attorney-conducted and -directed law enforcement investigation. The cases of *Morelli* and *Rosenfeld* are far

---

1. *Floe v. Plowden* was decided 20 years before Rule 30(b)(6) was enacted. In *Lomar Discount,* a tax case, the court determined that the respondent could depose two IRS agents "where the in-court examination of government officials possessing knowledge concerning this investigation

relating to this suit would be severely curtailed by the government's decision to call only one ... agent." 62 F.R.D. at 422. *Allendale Mut. Ins.* dealt with whether a privilege log had adequately demonstrated that certain documents had been prepared in anticipation of litigation.

more informative. After considering the "matters" specified in Buntrock's 30(b)(6) notice, the court here, like the courts in *Morelli* and *Rosenfeld*, concludes that this discovery is intended to ascertain how the SEC intends to marshal its facts, documents, and testimonial evidence, and to discover the inferences the SEC believes can be drawn from that evidence. As a result, quashing the notice and barring any such deposition is appropriate.

■ As already noted, the notice seeks, if not the deposition of opposing counsel, then the practical equivalent thereof. Courts in this district have generally taken a critical view of such a tactic. *Johnstone v. Wabick*, 220 F.Supp.2d 899 (N.D.Ill.2002); *Prevue Pet Products v. Avian Adventures*, 200 F.R.D. 413 (N.D.Ill.2001); *M & R Amusements Corp. v. Blair*, 142 F.R.D. 304 (N.D.Ill.1992); *Harriston v. Chicago Tribune Co.*, 134 F.R.D. 232 (N.D.Ill.1990); *Marco Island Partners v. Oak Development Corp.*, 117 F.R.D. 418 (N.D.Ill.1987). While there is no "blanket immunity" that exempts attorneys from being deposed, case law acknowledges that it presents a unique opportunity for harassment. *Prevue Pet Products*, 200 F.R.D. at 418. As a result, when considering the propriety of 30(b)(6) notices such as the one at issue here, courts of this district have generally followed an Eighth Circuit case, *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir.1986). The court there required that the party seeking the deposition show that: (1) no other means exist to obtain the information; (2) the information sought is relevant and non-privileged; and (3) the information sought is crucial to the preparation of the case. 805 F.2d at 1327, *cited in Prevue Pet Products*, 200 F.R.D. at 418; *M & R Amusements Corp.*, 142 F.R.D. at 306; *Harriston*, 134 F.R.D. at 233; and *Marco Island Partners*, 117 F.R.D. at 420. Here, Buntrock has failed to make such a showing.

■ Buntrock is unconvincing in his argument that there is no other means to obtain the information he seeks. Given the staggering amount of evidence the SEC has already turned over, the court finds this hard to believe, and Buntrock offers little in the way of explanation. Buntrock claims he has looked through all the documents produced and feels "no facts suggest [he] engaged in fraud." (*Defendant Buntrock's Response*, at 3). By the same token, however, Buntrock reminds the court that he:

> denies any wrongdoing. Thus, from Buntrock's point of view, *no facts* adduced through documents or via deposition of persons with first-hand knowledge will support the SEC's allegations in this case.

(*Id.*, at 12 (emphasis in original)). This certainly sheds some light on why Buntrock cannot discover the facts he claims to be seeking from sources other than a deposition involving SEC attorneys. The facts are certainly available in the materials produced but, as we shall see, it is not really mere facts that Buntrock seeks.

Buntrock also argues that the SEC cannot show that the deposition will necessarily involve work product. The subject matter he seeks in his notice of deposition, however, necessarily involves work product. In *Rosenfeld*, the defendant's 30(b)(6) notice was similar to the one at issue here, covering many of the same types of "matters." *Rosenfeld*, 1997 WL 576021, *1. The court's review of the subject matter sought convinced it that a protective order should be granted:

> Rather than using interrogatories ... and Requests to Produce Documents ... and then taking the necessary oral discovery from the witnesses with knowledge of the facts alleged in the complaint, [the defendant] seeks to explore the extent of the SEC's knowledge (how much it knows and how much it does not know) as a result of the investigative efforts of its attorneys. This Rule 30(b)(6) discovery is obviously aimed at finding the nature of the SEC's attorney work product, and is denied for that reason.

*Rosenfeld*, 1997 WL 576021, *3. A similar result in this matter is just as appropriate.

Buntrock himself betrays the true nature of the discovery he seeks. Throughout his brief on this issue, Buntrock argues that he is entitled to discovery of the "facts" that support the SEC's allegations. But after a close reading of Buntrock's submissions in

this matter, it becomes clear that Buntrock is after more than just "facts." Buntrock is seeking to discover the SEC's theories as to the underlying facts, how it intends to marshal those facts, and its belief as to the inferences that may be drawn from those facts. Tellingly, Buntrock himself explains that "[t]he SEC has alleged fraud, and only the SEC knows what facts *in its view support* that serious allegation." (*Defendant Buntrock's Response,* at 12 (emphasis added)). Such discovery clearly seeks not the facts, but the manner in which the SEC intends to marshal them. At another point, Buntrock contends that he "seeks the SEC's *position* on the facts supporting its allegations of wrongdoing against Buntrock."(*Id.,* at 18 (emphasis added)). He also contends that "only the SEC can adduce the facts to illuminate its ... position." (*Id.* at 6). Obviously, what Buntrock describes as "facts" are not merely facts at all, but legal theories and explanations of those theories: the SEC's legal position in this case, and how it arrived at that position. He is certainly not entitled to that type of discovery. *Rosenfeld,* 1997 WL 576021, *3–4; *Morelli,* 143 F.R.D. at 47.

The case upon which Buntrock relies, *Protective Nat'l Ins.,* serve to highlight the necessary distinction between "facts" and attorney work product. The issue there was whether the deponent-employee had to relate facts that she had learned from the defendant's attorneys, with the defendant raising both attorney-client privilege and work product objections. The court found that:

> There is simply nothing wrong with asking for facts from a deponent even though those facts may have been communicated to the deponent by the deponent's counsel. But, depending upon how questions are phrased to the witness, deposition questions may tend to elicit the impressions of counsel about the relative significance of the facts; opposing counsel is not entitled to his adversaries' thought processes. Here the effort must be to protect against indirect disclosure of an attorney's mental impressions or theories of the case.

> The problem in this type of situation is determining the degree to which a particular deposition question elicits the mental impressions of the attorney who communicated a fact to the deponent.

137 F.R.D. at 280. In order to assess the degree to which a question might reveal the mental impressions of counsel, the court relied extensively on *Lance, Inc. v. Ginsburg,* 32 F.R.D. 51 (E.D.Pa.1962). That case also sought to brighten the line where facts become legal theories:

> the client presumably knows the facts (although not always), but he can hardly be expected to know their legal consequences. This is what lawyers are for. Defendant, of course, when asked the factual basis for what is obviously his lawyer's allegation, could simply aver lack of knowledge... [T]he cause of justice and the fruitful advancement of discovery will be better served by refusing plaintiff's motion to compel answers on depositions to inquiries on the factual basis of conclusionary[sic] allegations. While, as we have sought to make clear, plaintiff is undoubtedly entitled to such information ... it could be more expeditiously and more intelligently obtained by written interrogatories.

32 F.R.D. at 53, *quoted in Protective Nat. Ins.,* 137 F.R.D. at 281. The same could certainly be said for the discovery at issue here; the "facts"—if that is truly what Buntrock is after—are available elsewhere and through other means. The distinction that seems to be evading Buntrock is between "factual knowledge alone, as opposed to factual knowledge underlying legal conclusions." *Protective Nat. Ins.,* 137 F.R.D. at 281, *quoting Lance, Inc.,* 32 F.R.D. at 53. Buntrock seeks knowledge a step beyond "factual knowledge alone;" he seeks, as his own submissions reveal, what the SEC's attorneys brought to bear having discovered those facts. Consequently, the SEC is entitled to the protective order it seeks, and Buntrock's 30(b)(6) notice must be quashed.

 Buntrock also argues that "the SEC has waived any claim it may have had that it is beyond Rule 30(b)(6) because the attorney who signed the complaint filed an affidavit in another proceeding against WMI and testified in a proceeding against Arthur Andersen." In support of its claim, it cites *United States v. Nobles,* 422 U.S. 225, 95

S.Ct. 2160, 45 L.Ed.2d 141 (1975); and *Brown v. Trigg*, 791 F.2d 598 (7th Cir.1986), asserting that through such testimony, the SEC has waived all work product immunity. The burden is on the party asserting a waiver of work product immunity to establish the waiver. *Greene, Tweed of Delaware, Inc. v. DuPont Dow Elastomers, L.L.C.*, 202 F.R.D. 418, 423 (E.D.Pa.2001); *In re Convergent Technologies Second Half 1984 Securities Litigation*, 122 F.R.D. 555, 565 (N.D.Cal. 1988). Buntrock's attempt to do so here—which consists of citing snippets of testimony without relating them to the information it seeks here or developing a legal argument beyond a citation, without discussion, to two cases—falls short of this requirement.

Those two cases, *Nobles* and *Trigg*, both involved defense counsel's use of hired investigator testimony. In *Nobles*, for example, the defense sought to call an investigator to testify about interviews he had conducted with witnesses to a crime, but at the same time to withhold his written report of the interviews under the work-product privilege. The Supreme Court held that the defense could not invoke the privilege, and that in line with normal trial practice it would have to provide a copy of relevant portions of the report to the prosecution for use in cross-examining the investigator. The Court stated that the defense could "no more advance the work-product doctrine to sustain a unilateral testimonial use of work-product materials than he could elect to testify on his own behalf and thereafter assert his Fifth Amendment to resist cross-examination on matters reasonably related to those brought out in direct examination." 422 U.S. at 240, 95 S.Ct. at 2171. Beyond these exact circumstances, however, the Court noted that what constituted a waiver of work product would vary from case to case:

> Counsel necessarily makes use throughout trial of the notes, documents, and other internal materials prepared to present adequately his client's case, and often relies on them in examining witnesses. When so used, there is normally no waiver. But where, as here, counsel attempts to make a testimonial use of these materials the normal rules of evidence come into play with respect to cross-examination and production of documents.

422 U.S. at 239 n. 14, 95 S.Ct. at 2171 n. 14. Buntrock's presentation of the testimony he feels resulted in a waiver fails to convince the court that the ruling in *Nobles* applies here. The court in the *Florida State* case had to determine whether WMI had waived privilege by turning over certain documents to the SEC under a confidentiality agreement. In the affidavit, the SEC attorney attempted to educate the court on the criteria the SEC required before it would enter into such an agreement. As a consequence, the affidavit described certain SEC procedures, but only in general terms. The attorney's testimony in the *Arthur Andersen* case was, similarly, couched in rather general terms. He explained accounting principles, and the manner in which the SEC conducts investigations. Even in Buntrock's own characterization of this testimony, nothing very specific appears to have been revealed, let alone anything that would constitute work product and trigger the waiver considered in *Nobles*. (*Defendant Buntrock's Response*, at 2–3). There is simply nothing in the nature of the testimony that convinces the court that the SEC has waived the work product immunity covering the information Buntrock is seeking here.

■ One additional matter detains us: although Buntrock is less than clear, it would appear he is arguing that the SEC attorney's testimony in these other matters resulted in a "subject matter" waiver. That is, because the attorney explained certain SEC investigatory procedures, the SEC has waived the work product immunity, as Buntrock would have it, everything involved in the investigation at issue here. Courts have consistently held that there exists no subject matter waiver for the kind of work product expressly defined in Fed.R.Civ.P. 26(b)(3) as "the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation," which is commonly termed "opinion" work product. *Blanchard v. EdgeMark Financial Corp.*, 192 F.R.D. 233, 237 (N.D.Ill.2000); *Canel v. Lincoln Nat. Bank*, 179 F.R.D. 224, 226–227 (N.D.Ill.1998) (and collected cases). As previously indicated, review of Buntrock's

submissions in this matter leads to the conclusion that this "opinion" work product is exactly what he is seeking. As such, the waiver Buntrock urges occurred would not allow him the discovery he seeks.

### CONCLUSION

For the foregoing reasons the Securities and Exchange Commission's Motion for Protective Order and to Quash Defendant Buntrock's Rule 30(b)(6) Deposition Notice is GRANTED.