Filed 7/3/25

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Petitioner, | E084854 |
| v. | (Super.Ct.No. CVRI2101654) |
| THE SUPERIOR COURT OF RIVERSIDE COUNTY, | OPINION |
| Respondent; | |
| CREDIT ONE BANK, N.A., | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS; petition for extraordinary writ.  Harold W. Hopp, Judge.  Petition granted.

Michael A. Hestrin, Jeffrey F. Rosen, Summer Stephan, George Gascon, Nathan J. Hochman, District Attorneys, Harold R. Anderson, Evan Goldsmith, Tamalca Harris, Colleen E. Huschke, and Hoon Chun, Deputy District Attorneys for Petitioner.

Rob Bonta, Attorney General, and Adelina Acuña, Deputy Attorney General as Amicus Curiae on behalf of Petitioner.

No appearance for Respondent.

Quinn Emanuel Urquhart & Sullivan, Steven G. Madison, and Mari F. Henderson for Real Party in Interest.

The district attorneys of four counties brought a civil enforcement action on behalf of the People of the State of California. They here challenge a trial court discovery ruling by petition for writ of mandate. We publish our opinion to clarify the standard for determining whether the defendant in a civil enforcement action may require the People to designate and produce for deposition a person most qualified to testify on their behalf (PMQ) per Code of Civil Procedure section 2025.230.[1]

Real party in interest Credit One Bank, N.A. (Credit One) noticed the People's deposition on 25 topics, including two document requests. The People here challenge an order denying in part their request for a protective order. The trial court found the People must designate a PMQ but limited the topics and document requests.

The People dispute that they may be required to designate a PMQ, asking that we find as a matter of first impression that the People are not a person or entity subject to deposition under section 2025.010. They also argue the PMQ deposition Credit One seeks is tantamount to a deposition of opposing counsel, and the trial court erred by failing to consider and apply the limitations on such depositions articulated in *Carehouse Convalescent Hospital v. Superior Court* (2006) 143 Cal.App.4th 1558 (*Carehouse*) and similar authority.

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

We reject the first argument but agree with the second. That is, we reject the notion that the People (through PMQs) may never be deposed, but Credit One must first demonstrate "'extremely' good cause" for the deposition. (*Carehouse*, *supra*, 143 Cal.App.4th at p. 1562.) The trial court did not apply this standard. We therefore grant the petition and order that the trial court reconsider the People's motion for a protective order.

FACTS

In March 2021, the district attorneys of Riverside, San Diego, Los Angeles, and Santa Clara counties, on behalf of the People, sued Credit One for violating California's Rosenthal Fair Debt Collection Practices Act (Civ. Code, § 1788 et seq., Rosenthal Act) and Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq., UCL). The People allege Credit One, either directly or through vendors, engaged in debt collection activities "that involve unreasonably frequent and harassing phone call patterns and conduct." The lawsuit seeks injunctive relief, civil penalties, restitution to victims, costs of suit, and other equitable relief.

Credit One propounded written discovery, and the People responded. In April 2023, the People served written objections and responses to 14 requests for production of documents, 33 special interrogatories, and a set of form interrogatories. The People's production included thousands of pages of documents. In March 2024, the People served objections and responses to 18 requests for admissions and another response to form interrogatories.

3

In January 2024, Credit One noticed the deposition of the People's PMQ. The notice identified 25 topics for testimony and requested production of two categories of documents. The first 15 topics sought testimony about allegations in the complaint and the People's investigation before filing the complaint. The next eight topics sought testimony about the People's communications with various third parties regarding Credit One or the complaint's allegations, including a catch-all that would cover communications with any third parties "relevant to the allegations." The 24th topic sought names, addresses, phone numbers, and other identifying information for each person with whom the People communicated regarding "any of the facts alleged" in the complaint or "in the course of [the People's] investigation of the facts alleged" in the complaint. The last topic sought testimony on the documents the People will rely on at trial. The two document requests encompass any documents the PMQ "reviewed or relied upon to provide testimony" on the first 21 of the 25 topics, as well as any documents in the People's possession that "relate in any way" to those 21 topics.

In February 2024, the People served Credit One with objections to the deposition notice and moved to quash. The court denied the motion without prejudice, instructing the People to refile it as a motion for a protective order under section 2025.420. The People did so in June 2024.

In a written order, the court granted in part and denied in part the People's motion for a protective order. The trial court found "it is proper in an action such as this for a defendant to notice the deposition of 'The People of the State of California,' and that the

4

government agencies who are bringing the action are required by [section 2025.230] to designate the individuals who are most qualified to testify on their collective behalf as to the matters specified in the deposition notice 'to the extent of any information known or reasonably available' to them."

The court, however, modified the topics. It deleted the 24th topic, finding an oral deposition was an "inefficient and unnecessarily burdensome method of gathering the information responsive to the topic." The court eliminated the 25th topic because it sought information privileged as attorney work product: "defendant may certainly discover what evidence the People possess, but may not discover what evidence the People have decided to present." The court also excluded any "internal discussions within or between the four district attorney's offices as to the merits of bringing the action, whether the complaint should be filed, what witnesses to interview or to obtain statements from, what documents or other evidence should be gathered, how the litigation should be conducted, what legal theories to pursue, or what evidence the People have decided to present at trial." The court reframed the remaining topics, ordering that the identity of witnesses with whom the People have communicated, the content of the statements the witnesses made, and any documents the witnesses provided, "may be discovered, as it relates to" 11 specified categories. The court also allowed discovery of

5

the identity of any other "witness with whom the People communicated" about Credit One.[2]

As to the document requests, the court ordered: "the People shall produce the documents reviewed by the person(s) [designated] to testify on their behalf (category 1) but category two is overbroad and no documents need be produced in response to it except for documents constituting the communications or the documents received from the witnesses, vendors, regulators, consumer organizations, law firms, credit agencies, etc. or the witness statements referred to" in the reframed deposition topics. The court required the People to prepare a privilege log for any claims of privilege, with the caveat

---

[2] "The identity of witnesses with whom the People communicated, the content of statements they made, and any documents they provided, may be discovered, as it relates to; (a) defendant's policies concerning the number of calls made to consumers per day, (b) who was contacted by defendant or any vendor(s) acting on defendant's behalf, (c) the instructions given to vendors or defendant's employees or agents concerning whom to contact, how often or when to make contact, and the methods used to make such contacts, (d) the contact information for California consumers as to whom defendant engaged in unlawful debt collection practices, (e) contacts with particular California consumers referred to in the complaint, (f) miscommunications, such as contacts to wrong numbers, (g) communications between defendant or its vendors to California consumers who disputed any aspect of their alleged debt owed to defendant or who requested that contacts cease[,] (h) complaints made by California consumers to any consumer organization, such as the Better Business Bureau, Consumer Sentinel Network, or Consumer Affairs or communications between the People and any such entity, (i) communications between the People and federal or state regulators, law firms who have litigated against defendant concerning alleged unlawful debt collection practices, or consumer organizations referenced in (h) concerning defendant's allegedly unlawful debt collection practices, (j) communications with any credit agency concerning defendant, and (k) communications with any vendor or company who engaged in debt collection for defendant concerning such debt collection. If not covered by these topics, the identity of any witness with whom the People communicated concerning defendant." In a footnote, the court set aside for later consideration, if necessary, whether communications with any California state regulator are privileged.

6

that "[d]ocuments that contain only internal communications within or between the four district attorney's offices shall not be produced and need not be identified on a log of privileged documents." That caveat was itself limited: "To the extent that a witness's statement is contained only in such a document, it shall be redacted and the portion containing the witness's statement produced (if it is otherwise ordered produced . . .). However, if the witness's statement is contained in another document, the internal communication need not be produced."

The People filed their writ petition challenging the court's order in October 2024. The same month, the California Attorney General filed an amicus letter supporting the petition and urging us to "clarify that civil prosecutors bringing actions in the name of the People are entitled to the same work product protections as all other attorneys." In December 2024, we issued an order to show cause.[3]

DISCUSSION

A. *Writ Review*

Writ review of discovery rulings is generally disfavored. (*O'Grady v. Superior Court* (2006) 139 Cal.App.4th 1423, 1439.) It is "ordinarily limited to situations involving (1) an issue of first impression that is of general importance to the legal profession, (2) an order denying discovery that effectively precludes a litigant from having a fair opportunity to litigate his or her case, or (3) a ruling compelling discovery

---

[3] Credit One agreed not to re-notice the PMQ deposition pending our ruling here, so the People did not request, and we did not order, a stay.

7

that violates a privilege." (*City of Petaluma v. Superior Court* (2016) 248 Cal.App.4th 1023, 1031.)

Writ review is appropriate here for several reasons. The argument that the People are not a person or entity subject to deposition under the Code of Civil Procedure has not been considered in a published appellate decision. And there is a dearth of caselaw addressing whether and how *Carehouse* applies in a civil enforcement action brought by the People. Also, courts have held a discovery order allowing the deposition of opposing counsel "is a suitable subject for prerogative writ review [citation], because the damage done by improperly allowing such discovery cannot readily be cured after it has occurred." (*Spectra-Physics, Inc. v. Superior Court* (1988) 198 Cal.App.3d 1487, 1493 (*Spectra-Physics*); see *Carehouse*, *supra*, 143 Cal.App.4th at pp. 1566-1567 [writ relief granted from order allowing deposition of opposing counsel].) Here, the parties dispute whether the trial court's order in effect allows the deposition of opposing counsel.

Discovery orders are generally reviewed for abuse of discretion. (*Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 733 (*Costco*); see *Nativi v. Deutsche Bank National Trust Co.* (2014) 223 Cal.App.4th 261, 316-317 ["'[T]he issuance and formulation of protective orders are to a large extent discretionary'"].) "'Where there is a basis for the trial court's ruling and the evidence supports it, a reviewing court will not substitute its opinion for that of the trial court.'" (*OXY Resources California LLC v. Superior Court* (2004) 115 Cal.App.4th 874, 887.) "An

8

abuse of discretion is shown when the trial court applies the wrong legal standard." (*Costco*, at p. 733.)

B. *Persons and Entities Within California Subject to Deposition*

"The Civil Discovery Act sets out six methods by which litigants can obtain pretrial disclosure of relevant information: (a) depositions; (b) interrogatories; (c) inspections of documents, things, and places; (d) physical and mental examinations; (e) requests for admissions; and (f) exchanges of expert trial witness information." (*City of Los Angeles v. PricewaterhouseCoopers, LLP* (2024) 17 Cal.5th 46, 61; see § 2019.010.) "The procedures relevant to discovery under each of these six methods are outlined in different chapters of the Act." (*Ibid.*) Chapter 9 governs oral depositions inside California. (§§ 2025.010-2025.620)

"'In establishing the statutory methods of obtaining discovery, it was the intent of the Legislature that discovery be allowed whenever consistent with justice and public policy.'" (*Sinaiko Healthcare Consulting, Inc. v. Pacific Healthcare Consultants* (2007) 148 Cal.App.4th 390, 402 (*Sinaiko*)). "[T]rial courts issuing discovery orders and appellate courts reviewing those orders should do so with the prodiscovery policies of the statutory scheme firmly in mind." (*Williams v. Superior Court* (2017) 3 Cal.5th 531, 541 (*Williams*).)

Section 2025.010 describes the persons and entities subject to deposition within California. The statute says: "Any party may obtain discovery . . . by taking in California the oral deposition of any person, including any party to the action. The person deposed

9

may be a natural person, an organization such as a public or private corporation, a partnership, an association, or a governmental agency."  When "the deponent named is not a natural person," section 2025.230 requires the deposition notice to "describe with reasonable particularity the matters on which examination is requested," and requires the deponent to "designate and produce at the deposition those of its officers, directors, managing agents, employees, or agents who are most qualified to testify on its behalf as to those matters to the extent of any information known or reasonably available to the deponent."

The People are a party to this action.  The first sentence of section 2025.010 defines a "person" who may be deposed to include "any party to the action."  Taking this sentence in isolation, the People are subject to deposition.  And since the People are not a "natural person," the procedures of section 2025.230 apply, including the requirement that they designate one or more persons most qualified to testify on their behalf as to noticed topics.  The person deposed "may" be someone within the categories listed in the second sentence of the section.  Especially given the broad scope of the first sentence, however, we see no reason to read the language as meaning the deponent *may only* be someone in those categories.

The People challenge this clarity by reading the second sentence of section 2025.010 as a limitation on the first.  They argue "the People" are not a "natural person," nor are they "an organization" such as a "public or private corporation," "a partnership," or "an association."  And they emphasize that the People should not be equated with a

10

"governmental agency," even though governmental agencies brought this action on the People's behalf: "[T]he district attorney is not the plaintiff, nor a party to the action, but simply the legal representative of the People." (*Gamestop, Inc. v. Superior Court* (2018) 26 Cal.App.5th 502, 511 (*Gamestop*).) From that, they conclude the People are not a "person" subject to deposition under section 2025.010.

The People's reading of the statute is not the most straightforward one. While the first sentence of section 2025.010 deems "any person" subject to deposition, including "any party," the People read the provision as if it said "any party except the People of the State of California" by arguing that the Legislature implied an exception to "any party" in the next sentence. The People's interpretation is, at best, in tension with the principle of liberal construction in favor of discovery. (See *Williams*, *supra*, 3 Cal.5th at p. 540; *Sinaiko*, *supra*, 148 Cal.App.4th at p. 402.)

Another argument for a contrary conclusion—albeit not one the parties have raised—might be based on the principle of statutory construction that "'in the absence of express words to the contrary, neither the state nor its subdivisions are included within the general words of a statute.'" (*People v. Crow* (1993) 6 Cal.4th 952, 958.) Despite this canon of construction, it also is "well-established" that "'"[w]here . . . no impairment of sovereign powers would result, the reason underlying this rule of construction ceases to exist . . . .'"'" (*Ibid.*) The People have not attempted to articulate why requiring the People to designate a PMQ in this civil enforcement matter might impair any sovereign powers, while participation in other forms of discovery does not.

11

The People's reading of section 2025.010 also does not fit well with the statutory history. Before 1987, the statute providing for depositions as a method of discovery said simply that "Any party may take the testimony of any person, including a party, by deposition upon oral examination . . . ." (Former § 2016, subd. (a), added by Stats. 1957, ch. 1904, § 3, p. 3322.) Our Supreme Court clarified that "person" as used in the discovery statutes, and other statutes, encompassed more than just natural persons. (See *Chronicle Publishing Co. v. Superior Court* (1960) 54 Cal.2d 548, 561, 575-576 [rejecting corporation's argument that "discovery by deposition cannot be compelled of a corporation"]; *City of Los Angeles v. City of San Fernando* (1975) 14 Cal.3d 199, 276-277 [where "'no impairment of sovereign powers would result,'" "governmental agencies have been held subject to legislation which by its terms applies simply to any 'person'."].)

In 1987, the former statutory language was moved to a new statute and modified to make express that persons subject to deposition included both natural and non-natural persons, including without qualification *any* party to the action: "Any party may obtain discovery . . . by taking in California the oral deposition of any person, including, but not limited to, a natural person, an organization such as a public or private corporation, a partnership, an association, or a governmental agency, including the deposition of any party to the action." (Former § 2025, subd. (a), added by Stats. 1986, ch. 1334, § 2, p. 4708, operative July 1, 1987.)

12

That provision was amended before it took effect to the two-sentence form that now appears in section 2025.010. (Former § 2025, subd. (a), amended Stats 1987 ch. 86, § 8, p. 308, operative July 1, 1987 ["Any party may obtain discovery . . . by taking in California the oral deposition of any person, including any party to the action. The person deposed may be a natural person, an organization such as a public or private corporation, a partnership, an association, or a governmental agency."]; see Cal. Law Revision Com. com., foll. § 2025.010 ["Section 2025.010 continues former Section 2025(a) without change, except to conform the cross-references"].) There is no indication, however, that the switch to a two-sentence format was motivated by anything other than stylistic considerations; moving the non-restrictive modifying phrase "including, but not limited to, a natural person, an organization such as a public or private corporation, a partnership, an association, or a governmental agency" to a new sentence and eliminating the serial use of the word "including" within a single sentence. If the Legislature intended a substantive change, we would expect different language, expressly delineating any intended exception to the otherwise all-encompassing definition of "any person" to include "any party to the action."

We agree with the trial court that, in a civil enforcement action brought by a government agency (or, as here, several government agencies) on behalf of the People, it is proper for the defendant to notice the People's deposition under section 2025.010. The procedures of section 2025.230 apply because neither the People, nor the government agency, is a natural person.

13

C. *Deposing the People's counsel*

The parties dispute whether deposing the People amounts to deposing the People's counsel. We find that it does, though that does not necessarily mean the deposition may not be taken.

Deposing opposing counsel is disfavored for public policy reasons. (See *Spectra-Physics*, *supra*, 198 Cal.App.3d at p. 1494.) Generally, "[c]ounsel should be free to devote his or her time and efforts to preparing the client's case without fear of being interrogated by his or her opponent." (*Ibid.*; accord *Carehouse*, *supra*, 143 Cal.App.4th at p. 1563 ["Attorney depositions chill the attorney-client relationship, impede civility and easily lend themselves to gamesmanship and abuse"].) Depositions of opposing counsel disrupt the adversarial system and have limited usefulness due to the attorney-client and work product privileges. (*Spectra-Physics*, at p. 1494.) Thus, "[d]epositions of opposing counsel are presumptively improper, severely restricted, and require 'extremely' good cause—a high standard." (*Carehouse*, at p. 1562.)

In considering the propriety of deposing opposing counsel in a particular case, California applies a three-pronged test, adopted from the federal majority view articulated in *Shelton v. American Motors Corp.* (8th Cir. 1986) 805 F.2d 1323, 1327 (*Shelton*).[4]

---

[4] The alternative federal test, articulated in *In re Subpoena Issued to Dennis Friedman* (2nd Cir. 2003) 350 F.3d 65, 72, is a somewhat more "flexible approach," taking into consideration "the need to depose the lawyer, the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation, the risk of encountering privilege and work-product issues, and the extent of discovery already conducted." In practice, the federal courts have found the two tests are only "'slightly different,'" and both create a presumption against deposing opposing counsel.

*[footnote continued on next page]*

14

The test is: "First, does the proponent have other practicable means to obtain the information?  Second, is the information crucial to the preparation of the case?  Third, is the information subject to a privilege?"  (*Carehouse*, *supra*, 143 Cal.App.4th at p. 1563.)  "Each of these prongs poses an independent hurdle to deposing an adversary's counsel; any one of them may be sufficient to defeat the attempted attorney deposition."  (*Ibid.*)  The proponent of the deposition "has the burden of proof to establish the predicate circumstances for the first two prongs," while the party opposing discovery has the burden of establishing the preliminary facts to support any claim of privilege.  (*Ibid.*)

Credit One disavows any intention to depose the People's counsel.  Instead, it proposes, the district attorneys may "educate any of the nearly 650 investigators spread across its offices to serve as its Person Most Qualified deponent."  In Credit One's view, therefore, *Carehouse* and similar authority do not apply here.  The People's view is that those who investigated the case were either attorneys or investigators acting at the direction of attorneys, so any deposition on the noticed topics, even as limited by the trial court, is in practical effect a deposition of the People's counsel.  The People conclude on that basis the issue should be analyzed under the rubric applicable to attempts to depose opposing counsel.

There is no California appellate authority that resolves this disagreement.  Credit One cites *People v. Venice Suites, LLC* (2021) 71 Cal.App.5th 715, 722-723 (*Venice*

(*Monster Energy Co. v. Vital Pharm.*, *Inc.* (C.D. Cal. Mar. 10, 2020, No. 5:18-cv-01882-JGB (SHKx)), 2020 U.S. Dist.LEXIS 87320, *20.)  The Ninth Circuit has not established a standard for when a party may depose opposing counsel, and the district courts in the circuit have used both alternatives.  (*Id.* at *19.)

*Suites*) as an example of a case where, in a civil enforcement action that included a claim of unlawful business practices, the People designated a person most qualified to testify on its behalf. *Venice Suites* mentions that deposition testimony by the People's PMQ, apparently on the issue of the City of Los Angeles's interpretation of certain municipal code provisions, supported a defendant's motion for summary adjudication. (*See id.* at p. 723 & fn. 3.) But *Venice Suites* does not address our issue. (See *Styne v. Stevens* (2001) 26 Cal.4th 42, 57 ["An opinion is not authority for a point not raised, considered, or resolved therein"].) Certainly, the People *may* designate a PMQ to be deposed on a noticed topic, and the PMQ may be one of its attorneys. (See *Sinaiko*, *supra*, 148 Cal.App.4th at p. 402 [because civil discovery is ""''essentially self-executing,''"" and "[g]enerally, the parties may modify the statutory discovery procedures" by stipulation, "the trial court does not usually consider either the propriety of a party's discovery demand or the adequacy of a party's response unless a dispute arises"].) Our issue is whether the People can be compelled to do so, and the standard to apply in making that determination.

Similar questions have been considered by federal courts when depositions are noticed under rule 30(b)(6) of the Federal Rules of Civil Procedure. "'Because of the similarity of California and federal discovery law, federal decisions have historically been considered persuasive absent contrary California decisions.'" (See *Ellis v. Toshiba America Information Systems, Inc.* (2013) 218 Cal.App.4th 853, 861-862, fn. 6.) Rule 30 uses language similar to section 2025.010 to authorize depositions, stating that "[a] party

16

may, by oral questions, depose any person, including a party, without leave of court . . . ." (Fed. Rules Civ. Proc., rule 30(a)(1).)  And, like California discovery laws, the federal rules "were designed to provide a 'liberal opportunity for discovery.'"  (*Yousuf v. Samantar* (D.C. Cir. 2006) 451 F.3d 248, 254 [holding that non-party Department of State was a "person" subject to subpoena duces tecum].)  Unfortunately, on the issue at hand, there is no discernable consensus or even majority approach.

For example, in *SEC v. Buntrock* (N.D. Ill. 2003) 217 F.R.D. 441 (*Buntrock*), a civil fraud enforcement action, the defendant sought to depose someone from the United States Securities and Exchange Commission (SEC) who could testify on 12 topics that "basically involve[d] the results of the SEC's investigation."  (*Id.* at p. 443.)  As the People do here, the SEC objected that the only people who investigated the case were either SEC attorneys or SEC investigators acting at the direction of SEC attorneys, so the deposition would "necessarily involve the testimony of attorneys assigned to [the] case, or require those attorneys to prepare other witnesses to testify."  (*Id.* at p. 444.)  The district court agreed with the SEC, finding the defendant sought, "if not the deposition of opposing counsel, then the practical equivalent thereof."  (*Id.* at p. 445.)  Applying the *Shelton* factors, the court found the defendant had failed to make the required showing.  (*Buntrock*, at p. 445.)  To the extent the defendant sought "the 'facts' that support the SEC's allegations," they were "available" in the "staggering amount of evidence" the SEC had already produced in written form.  (*Ibid.*)  The court viewed the deposition as seeking "not really mere facts," but instead "the SEC's theories as to the underlying facts,

17

how it intends to marshal those facts, and its belief as to the inferences that may be drawn from those facts." (*Id.* at pp. 445-446.)  On that basis, the court issued the SEC a protective order and quashed the deposition notice.  (*Id.* at pp. 446, 448.)

Similar facts and similar arguments yielded a different result in *SEC v. Merkin* (S.D. Fla. 2012) 283 F.R.D. 689 (*Merkin*).  Again, the case was a civil enforcement action, in which the defendant sought to depose the SEC about the results of its investigation.  (*Id.* at pp. 691-692.)  The SEC argued, among other things, that "the request was tantamount to an effort to take the deposition of SEC counsel," and that "either SEC counsel or an investigator prepared by SEC counsel would need to appear as the [deponent] for the Government."  (*Id.* at p. 694.)  The district court rejected that perspective, instead applying the "general proposition" that "government agencies embroiled in litigation are subject to the same discovery rules as private litigants, regardless of the level of government to which the agency belongs."  (*Id.* at p. 696.)  The court found no "meaningful distinction" between "an SEC attorney preparing a government investigator as the designee" and "a private attorney preparing the client's current or former employees" for a deposition because "[t]he privilege argument is identical."  (*Ibid.*)  The district court narrowed the noticed topics to eliminate some it viewed as "irrelevant and/or overly broad," and confirmed that the SEC could instruct its witnesses not to answer questions that required disclosure of privileged information but permitted the deposition to proceed.  (*Id.* at p. 698.)

18

Both the *Buntrock* and *Merkin* approaches have been followed recently. (Compare *SEC v. Princeton Alternative Funding, LLC* (D. N.J., Jan. 8, 2025, No. 21-12971 (RK)(JBD)) 2025 U.S. Dist. LEXIS 3553, *16 [citing *Buntrock*, stating "In case after case, courts have refused to permit depositions of SEC attorneys and other agency counsel where those depositions would lead to questioning counsel about information— even 'factual' information—obtained during pre-suit investigations."] with *SEC v. Putnam* (D. Utah Aug. 20, 2021, No. 2:20-cv-00301-DBB-DAO) 2021 U.S. Dist. LEXIS 159139, *9 [citing *Merkin*, stating "Where [defendants] explicitly and repeatedly asserted they seek only to discover facts underlying the claims, not the mental impressions or work product of the SEC's counsel, the SEC can make no preemptive claim of privilege"].) And this split is not limited to SEC civil enforcement actions. For example, in *Washington v. Alderwood Surgical Center, LLC* (W.D. Wash. Apr. 30, 2024, No. 2:22-CV-01835-RSM) 2024 U.S. Dist. LEXIS 78936, the district court rejected *Buntrock* arguments by the Washington Attorney General and allowed the deposition to proceed on topics seeking information about the state agency's investigation, finding they "generally seek factual information, not attorney mental impressions." (*Id.* at *9.) In contrast, in *Kentucky v. Marathon Petroleum Company LP* (W.D. Ky. June 26, 2018, No. 3:15-CV-354-DJH) 2018 U.S. Dist. LEXIS 106176 (*Marathon Petroleum*), the court followed *Buntrock*, finding deposing the Commonwealth would be the practical equivalent of deposing opposing counsel, namely, attorneys in the Commonwealth's Office of the Attorney General. (*Id.* at *6-7.) Applying the *Shelton* test, the court found the defendant

had not made the required showing of necessity and granted the Commonwealth's request for a protective order. (*Id.* at *13.)

We find the approach of cases like *Buntrock* and *Marathon Petroleum* most appropriate for civil enforcement actions like this one, brought on behalf of the People by a district attorney (or several of them). These government agencies are more akin to a law firm than a corporation, staffed primarily by attorneys and non-attorneys who work at their direction. (See *Marathon Petroleum*, *supra*, 2018 U.S. Dist. LEXIS 106176, at *9 ["Unlike a corporation, which has non-attorney officers and directors who can properly be designated as a 30(b)(6) representative, organizations like the [Office of the Attorney General] do not have such individuals"].) And in this lawsuit, they serve as the People's legal representative. (See *Gamestop, supra*, 26 Cal.App.5th at p. 511.) *Merkin* may be correct that the privilege concerns are the same, no matter whether an attorney is preparing a government investigator or an employee of a corporate client for a PMQ deposition. But the better analogy is to an attorney having to prepare a paralegal to be deposed on behalf of their law firm about an investigation the firm conducted for a client. The policy concerns raised by such a circumstance, addressed in cases like *Shelton*, *Carehouse*, and *Spectra-Physics*, are not limited to privilege issues. The deposition may be appropriate nevertheless, but the party who noticed it must show "'extremely' good cause." (*Carehouse*, *supra*, 143 Cal.App.4th at p. 1562.)

Thus, we hold that in a civil enforcement action brought by a district attorney (or a similar government agency, like the state's Attorney General) on behalf of the People, the

20

defendant may seek to depose the People's person or persons most qualified under section 2025.230. If the People seek a protective order, the trial court should analyze whether the deposition should proceed using the *Carehouse* standard for depositions of opposing counsel.

The trial court here took an approach like that of *Merkin* and similar cases, ordering the agencies representing the People to designate a witness or witnesses to be deposed on the noticed topics as modified without any finding that Credit One made a showing of "'extremely' good cause." (*Carehouse*, *supra*, 143 Cal.App.4th at p. 1562.) The court's choice to take such an approach was not unreasonable, in the absence of binding authority requiring it to do otherwise. Nevertheless, we have found a meaningfully different standard should be applied. The trial court therefore abused its discretion. (*Costco*, *supra*, 47 Cal.4th at p. 733.)

The parties have argued how they believe the *Carehouse* factors should be weighed in this case. We do not find it appropriate to decide that question here. (See *Richards v. CH2M Hill, Inc.* (2001) 26 Cal.4th 798, 824 ["Because the standard we announce is new, the proper course is to remand to the trial court for application" of that test to the facts].) We are unpersuaded by Credit One's arguments that the record shows the *Carehouse* factors are necessarily satisfied. We will therefore remand the case for the trial court to exercise discretion in the first instance under the standard clarified in this opinion.

21

## DISPOSITION

The petition for writ of mandate is granted.  Let a writ of mandate issue directing the respondent Superior Court of Riverside County to (1) vacate its order denying the People's motion for a protective order and (2) reconsider the motion in accordance with this opinion.

The parties shall each bear their own costs in this proceeding.

CERTIFIED FOR PUBLICATION

RAPHAEL_____
J.

We concur:

McKINSTER_____
         Acting P. J.

MENETREZ_____
         J.